[No. H000836. Sixth Dist. Oct. 17, 1985.]

LELAND STANFORD JUNIOR UNIVERSITY et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
NANCY JEWELL CROSS, Real Party in Interest.

COUNSEL

Antonio Rossmann, David M. Heilbron, James D. Agate, Anne-Christine Massullo, McCutchen, Doyle, Brown & Enersen, Margaret A. Sloan, Diane M. Lee, Donald L. Clark, County Counsel, and Susan G. Levenberg, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Nancy Jewell Cross, in pro. per., for Real Party in Interest.

OPINION

**THE COURT.**\*—In lawsuits brought by Nancy Jewell Cross against Stanford University and its Board of Trustees (collectively Stanford), the County

---

\*Before Panelli, P. J., Agliano, J., and Leach, J.†

†Assigned by the Chairperson of the Judicial Council.

of Santa Clara, the City of Palo Alto, and several other defendants, we are asked to review orders which (1) declare Judge Homer B. Thompson disqualified, on Cross's objection, under subdivision (a)(6)(C) of Code of Civil Procedure section 170.1, (2) determine that Judge Peter G. Stone (also challenged by Cross) should not be disqualified, and (3) deny Cross's motion to vacate orders Judge Thompson had made in the pending lawsuits before he was declared disqualified. We conclude that as a matter of law Judge Thompson was not disqualified and that the record supports respondent court's determination that Judge Stone was not disqualified; our conclusion that Judge Thompson was not disqualified moots the question whether his earlier orders should have been vacated.

Cross, in propria persona but purporting also to act for a "Committee For Safe and Sensible San Francisquito Creek Area Routing," filed three actions against Stanford, Santa Clara County, Palo Alto, and several others, "to challenge certain physical developments on the Stanford campus." The three actions were filed and most pretrial motions were heard in the Palo Alto Branch Department of respondent court. In due course Judge Thompson was assigned to the Palo Alto Branch Department; thereafter he heard motions in all three actions. On March 22, 1984, Judge Thompson signed orders in the first two actions which sustained, without leave to amend, general demurrers to Cross's complaints. On April 8 Judge Thompson filed an order dismissing both actions "with prejudice" as to Stanford, Santa Clara County, Palo Alto, and other defendants. (Cf. Code Civ. Proc., §§ 581, subd. (c), 581d.)

On April 19 Cross filed a "declaration of facts disqualifying the Honorable Homer B. Thompson" (cf. Code Civ. Proc., § 170.3, subd. (c)(1)) in all three actions. She alleged that Judge Thompson had been "President of Stanford Law Society, 1964-1972," that "[o]ne does not achieve and exercise these roles without deep commitments disqualifying in judicial role in controversies involving Stanford University and its trustees," and therefore that third persons "might reasonably question that any person in this relationship with [Stanford] would be able to be impartial in any action in which [Stanford] was involved." She alleged that she had first learned these facts, by chance, on April 18.

In the same document Cross moved to vacate several of Judge Thompson's orders, including the orders sustaining the demurrers and dismissing the first two actions as to the specified defendants.

Judge Thompson immediately filed a written verified answer (Code Civ. Proc., § 170.3, subd. (c)(3)) in which he acknowledged that he had participated in founding a Santa Clara County chapter of the Stanford Law Society

in the mid-1960's and had been the president of that chapter from 1969 to 1971, and that he had been a member of the Board of Visitors of Stanford Law School from 1969 to 1972, but denied that his activities had connoted broader leadership in Stanford affairs or deep commitment to any party. Judge Thompson alleged that since 1972 his only association with Stanford Law School had been "as a graduate attending graduate gatherings." He denied any bias and alleged "that a person aware of the facts would not reasonably entertain a doubt that the undersigned would be able to be impartial."

Under the procedure established by subdivisions (c)(5) and (c)(6) of Code of Civil Procedure section 170.3, a judge selected by the chairperson of the Judicial Council was assigned to hear and determine the disqualification question. The assigned judge determined that Judge Thompson should be disqualified. His written order recited that he had read Cross's statement and Judge Thompson's answer in light of subdivision (a)(6)(C) of the Code of Civil Procedure section 170.1. Subdivision (a)(6)(C) provides that a judge shall be disqualified if "[f]or any reason . . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." The assigned judge stated that "[w]hile there is no doubt in this Court's mind, nor the Court is sure in the mind of anyone who is familiar with the fine character of Judge Thompson, that his impartiality is beyond questions, the standard in question is directed to the sensibilities of a lay person. In a case involving Stanford University as the real party in interest, Judge Thompson's seven year presidency of the Stanford Law Society and three year presidency of the Stanford Law School Board of Visitors, might reasonably engender the doubt referred to and accordingly, like Caesar's wife, to avoid the appearance of impropriety, Judge Thompson is disqualified."

Stanford promptly petitioned this court for review by writ of mandate (Code Civ. Proc., § 170.3, subd. (d)); Santa Clara County and Palo Alto joined in the petition. Because it appeared that the motion to vacate Judge Thompson's earlier orders remained pending, we advised all parties that in the interests of judicial economy we would defer our decision until after the motion to vacate had been ruled on and would entertain a petition or petitions to review the order on that motion in this same writ proceeding.

The motion to vacate was to be reassigned to Judge Stone, but Cross filed a disqualification statement directed to Judge Stone, alleging that he had been the City Attorney of Palo Alto and later of San Jose, had been actively involved with municipalities and municipal law, and in one prior ruling in these actions had manifested antipathy toward nonlawyer Cross's attempt to represent her committee in court. Judge Stone filed a brief verified answer

to these allegations, denying bias. A second judge was assigned to determine whether Judge Stone should be disqualified. The second assigned judge denied "the motion to disqualify" Judge Stone.

Judge Stone then heard and denied the motion to vacate Judge Thompson's earlier orders.

Cross then filed in this court a very short document which purports to be both opposition to Stanford's petition and also her own petition for review of both the order denying her motion to vacate and the order denying disqualification of Judge Stone.

After Stanford lodged certain additional exhibits, Cross filed a motion to strike certain of Stanford's papers and for leave to file a final reply.

■ We first consider the order which declared Judge Thompson disqualified.

Stanford asserts that the assigned judge was mistaken as to the *facts* of which the hypothetical person referred to in subdivision (a)(6)(C) would have been aware. Cross's disqualification statement identified the source of her information as the third edition of Kenneth Arnold's "California Courts and Judges Handbook." With respect to the Stanford Law School Board of Visitors, Arnold reports no more than that Judge Thompson was (as he acknowledges) a *member* for a period of three years ending in 1972. Arnold did report that Judge Thompson was "President: . . . Stanford Law Society, 1964-1971," but Judge Thompson in necessary effect contradicts Arnold: Judge Thompson alleges, and Cross does not now deny, that in fact Judge Thompson was president only of a local chapter of the Stanford Law Society, and only for two years, ending in 1971.

In these circumstances we could properly remand the question of Judge Thompson's disqualification for further inquiry into and consideration of the true facts. But we are persuaded that reasonable minds could not differ as to the significance of the facts: Even if Judge Thompson had been (as Arnold reported and Cross assumed) president of the Stanford Law Society for seven years ending in 1971, as a matter of law Judge Thompson was not, and should not have been declared, disqualified. Therefore we simply direct that the assigned judge's determination be vacated and that a finding that Judge Thompson is not disqualified be entered.

■ *United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97 [216 Cal.Rptr. 4] suggests, on the basis of a detailed and persuasive analysis, that the standard established by subdivision (a)(6)(C)

"is fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated. 'To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed *through the eyes of the objective person.*' [Citations.] While this objective standard clearly indicates that the decision on disqualification not be based on the judge's personal view of his own impartiality [fn. omitted], it also suggests that the litigants' necessarily partisan views not provide the applicable frame of reference. [Citations.] Rather, 'a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.' [Citations.]" (170 Cal.App.3d at p. 104.)

"[T]he facts and circumstances bearing on the judge's possible partiality must be considered as of the time the motion is brought." (*Id.*, at p. 105.) When Cross filed her disqualification statement it had been 13 years since Judge Thompson had last been prominently involved in the two Stanford Law School alumni activities Cross identified. The assigned judge referred to his perception that there would be "no doubt . . . in the mind of anyone who is familiar with the fine character of Judge Thompson, that his impartiality is beyond questions . . . ." Surely a judge's character and reputation for impartiality are among facts the average person on the street would take into account. It may be that the assigned judge's reference to "a lay person" was an allusion to Cross herself. We do not question Cross's good faith in expressing her own doubts, but point out that under the *United Farm Workers of America* analysis "the litigants' necessarily partisan views [do] not provide the applicable frame of reference." (170 Cal.App.3d at p. 104.) We agree with *United Farm Workers of America* that "the proper performance of judicial duties does not require a judge to withdraw from society and live an ascetic, antiseptic and socially sterile life. Judicial responsibility does not require shrinking every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified." (170 Cal.App.3d at p. 100.) We conclude as a matter of law that the "average person on the street," aware of the facts, would find Judge Thompson's activities in and before 1972 both so remote and so unrelated to the management of Stanford's land and physical facilities as to raise no doubt as to Judge Thompson's ability to be impartial in this matter.

The judge assigned to determine whether Judge Stone was disqualified concluded that none of various specific bases for disqualification had been

proven but did not discuss subdivision (a)(6)(C). The conclusions the assigned judge expressly reached are supported by the record; we doubt Cross would disagree. But the thrust of Cross's argument was, once again, that a person aware of the facts might reasonably entertain a doubt as to Judge Stone's ability to hear these lawsuits impartially. Once again, we deem a remand unnecessary: Even more clearly than in Judge Thompson's case, the record reflects no factual basis for a reasonable doubt as to Judge Stone's impartiality.

If, as we conclude, Judge Thompson was not disqualified, then his prior orders could not have been vacated on the ground that he was, and Cross's contention that they should have been is mooted.

We deny Cross's motion to strike certain documents submitted to this court by Stanford: Certain of the materials submitted would have been requested by this court, to permit informed review, in any event, and we perceive no prejudice to Cross. Stanford's summary response to Cross's own petition raises no new issues and warrants no further reply; we deny Cross's motion to file the last paper. We also decline Stanford's invitation to involve ourselves in the frivolous-litigant proceedings it has commenced in respondent court: These issues are properly for the trial court at this stage.

We have followed the procedures and given the notices described in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-183 [203 Cal.Rptr. 626]. A peremptory writ of mandate will issue in the first instance.

Let a peremptory writ of mandate issue directing the Superior Court of Santa Clara County to vacate the "order on motion to disqualify the Honorable Homer B. Thompson" executed in actions P45169, P45683, and P46131 on June 13, 1985, and to enter a new order declaring that Judge Thompson is not disqualified. All other relief moved or prayed for herein is denied.

A petition for a rehearing was denied November 12, 1985, and the petition of real party in interest for review by the Supreme Court was denied January 23, 1986. Panelli, J., did not participate therein.