TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION | No. 91-1112 |
| of | MARCH 25, 1992 |
| DANIEL E. LUNGREN<br>Attorney General | |
| CLAYTON P. ROCHE<br>Deputy Attorney General | |

THE HONORABLE STEVEN M. WOODSIDE, COUNTY COUNSEL, SANTA CLARA COUNTY, has requested an opinion on the following question.

Absent a written waiver, is a municipal court judge disqualified from handling a criminal master calendar based on the fact that (1) he is married to a deputy district attorney; (2) he previously represented police officers while in private practice; and (3) he was formerly a police officer?

CONCLUSION

A municipal court judge is not disqualified from handling a criminal master calendar based on the fact that (1) he is married to a deputy district attorney; (2) he previously represented police officers while in private practice; and (3) he was formerly a police officer, even in the absence of a written waiver. He would, however, be required to disqualify himself with respect to any proceeding (1) where his spouse is the lawyer or has had any substantial involvement in the case; (2) where he believes he cannot be impartial; and (3) where an ordinary person would reasonably entertain doubt as to his ability to be impartial.

ANALYSIS

We are here requested to render an opinion as to the legal capacity of a municipal court judge to preside over a criminal master calendar where he is married to a deputy district attorney and was formerly a police officer and formerly represented police officers while in private practice. At the outset we would note that such judicial duties would normally not involve the judge in the merits of the proceedings, but would only entail assigning the cases to other judges. (See Cal. Rules of Court, rule 533.)

The question posed requires an examination of section 170.1 of the Code of Civil Procedure[1] which sets forth the grounds for disqualification of judges. That section was enacted in 1984 (Stats. 1984, ch. 1555, § 5) to mirror the then recently adopted California Code of Judicial Conduct. (See *United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97; Rothman, California Judicial Conduct Handbook (1990), p. iii; hereafter "Judicial Conduct Handbook.")

Section 170.1 provides in part:

"A judge shall be disqualified if any one or more of the following is true:

"(1) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

". . . . . . . . . . . . . . .

"(2) The judge served as a lawyer in the proceeding, or in any other proceeding involving the same issues he or she served as a lawyer for any party in the present proceeding or gave advice to any party in the present proceeding upon any matter involved in the action or proceeding.

". . . . . . . . . . . . . . .

"(3) The judge has a financial interest in the subject matter in a proceeding or in a party to the proceeding.

". . . . . . . . . . . . . . .

"(4) The judge, or the spouse of the judge, or a person within the third degree of relationship to either of them, or the spouse of such a person is a party to the proceeding or an officer, director, or trustee of a party.

"(5) A lawyer or spouse of a lawyer in the proceeding is the spouse, former spouse, child, sibling, or parent of the judge or the judge's spouse or if such a person is associated in the private practice of law with a lawyer in the proceeding.

"(6) For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification. . . ."

"(7) By reason of permanent or temporary physical impairment, the judge is unable to properly perceive the evidence or is unable to properly conduct the proceeding."

In addition, we note that Canon 2B of the Canons of Judicial Ethics provides in general terms:

---

[1]All section references are to the Code of Civil Procedure unless otherwise specified.

"Judges should not allow their families, social, or other relationships to influence their judicial conduct or judgment. Judges should not lend the prestige of their office to advance the private interests of others; nor should judges convey or permit others to convey the impression that they are in a special position to influence them. Judges should not testify voluntarily as character witnesses."

Canon 3C(1) specifically sets forth grounds for disqualification of a judge:

"Judges should disqualify themselves in a proceeding in which their disqualification is required by law, or their impartiality might reasonably be questioned, including but not limited to instances where:

"(a)    the judge has a personal bias or prejudice concerning a party:

". . . . . . . . . . . . . . . . .

"(d)    the judge or the judge's spouse, or a person within the third degree of relationship to either or them, or the spouse of such a person:

"(i)    is a party to the proceeding, or an officer, director, or a trustee of a party;

"(ii) is acting as a lawyer in the proceeding."

Finally, we observe two additional guideposts set forth by the Legislature and the courts in resolving possible disqualification situations. Section 170 states: "A judge has a duty to decide any proceeding in which he or she is not disqualified." The court in *United Farm Workers of America* v. *Superior Court, supra*, 170 Cal.App.3d 97, 103, explained this provision as follows:

". . . the section serves to remind judges of their duty to hear cases which are controversial and might subject them to public disapproval as well as to protect them from public criticism by a clear statement of their responsibility."

The second is the corollary concept that

". . . the proper performance of judicial duties does not require a judge to withdraw from society and live an ascetic, antiseptic and socially sterile life. Judicial responsibility does not require shrinking every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified. . . ." (*Id.,* at p. 100.)

With these statutes, canons of ethics, and judicial principles in mind, we proceed to the actual relationships presented herein.

### 1.    Spouse Who Is A Deputy District Attorney

Under both section 170.1 and Canon C(1)(d)(ii), if the judge's spouse is the attorney actually handling the case for the district attorney's office, there is no question that the judge must disqualify himself even when only administering the criminal master calendar. However, there is nothing in either section 170.1 or the Canons of Judicial Ethics which would require the judge to disqualify himself in all criminal cases.

Support for such conclusion may be found in the Judicial Conduct Handbook (Judicial Ethics Updates, Dec. 1988), wherein it is stated:

> "A judge hearing criminal cases whose spouse is a deputy district attorney, need not obtain written waivers from the parties or disclose the relationship, except in cases on which the attorney spouse has in any way participated."

Accordingly, the key element for disqualification is participation by the spouse in the particular matter.[2]

We therefore conclude that a municipal court judge whose spouse is a deputy district attorney is not disqualified from handling a master calendar by such fact alone; any determination to disqualify must be made on a case by case basis.

### 2. Representation Of Police Officers While In Private Practice

The second facet of the question is whether the municipal court judge would be disqualified from presiding over a criminal master calendar because he represented police officers while in private practice.

We find nothing in either section 170.1 or the Code of Judicial Ethics which would indicate such a required disqualification, except perhaps a perception that the judge might be biased in favor of the prosecution by virtue of such prior relationships. Under section 170.1, subdivision (a)(6)(C), a judge is disqualified "if a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (See also Canon C(1)(a).)

The test to be applied under this subdivision of section 170.1 is an objective one: what the perception of the average person on the street might be. As explained in *Leland Stanford Junior University* v. *Superior Court* (1985) 173 Cal.App.3d 403, 407-408:

> "*United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97 suggests, on the basis of a detailed and persuasive analysis, that the standard established by subdivision (a)(6)(C) `is fundamentally an objective one. It represents a legislative judgment that due to the sensitivity of the question and inherent difficulties of proof as well as the importance of public confidence in the judicial system, the issue is not limited to the existence of an actual bias. Rather, if a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated. "To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person." [Citations.] While this objective standard clearly indicates that the decision on disqualification not be based on the judge's personal view of his own impartiality [fn. omitted], it also suggests that the litigants' necessarily partisan views not provide the applicable frame of reference. [Citations.] Rather, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." [Citations.]'"

---

[2]Further support for our conclusion may be found in analogous cases concerning whether recusal of an entire district attorney's office should be required where a judge or opposing counsel was once a member of that office. (See *Love* v. *Superior Court* (1980) 111 Cal.App.3d 367, *Chadwick v. Superior Court* (1980) 106 Cal.App.3d 108; *Younger* v. *Superior Court* (1978) 77 Cal.App.3d 892.)

*United Farm Workers of America* v. *Superior Court, supra*, 170 Cal.App.3d 97 also held that the determination concerning disqualification under subdivision (a)(6)(C) is whether, under the facts, an average person could entertain a "reasonable doubt" as to the judge's impartiality. (See also *Briseno* v. *Superior Court* (1991) 233 Cal.App.3d 607, 620-622.)

We believe that an average person would not entertain a reasonable doubt as to a judge's impartiality in administering a master criminal calendar based upon the fact alone that he once represented police officers while in private practice. In our view, such prior representation of police officers would constitute a most tenuous ground for asserting that the judge could not act impartially in assigning criminal cases. Of course, such conclusion is subject to the judge's own subjective belief as to his impartiality under subdivision (a)(6)(B) of section 170.1.

### 3. Prior Employment As A Police Officer

The final facet of the question posed relates to the fact that the municipal court judge presiding over the criminal master calendar was himself a police officer at one time.

Except for possible *subjective* bias the judge might feel in cases where the witnesses will include police officers (see § 170.1, subds. (a)(6)(A), (B)), we find nothing in either section 170.1 or the Canons of Judicial Ethics which, *per se,* would require disqualification of the judge.

Moreover, we do not believe that such prior public employment, in and of itself, would give the average person a reasonable doubt concerning the ability of the judge to act impartially while administering a criminal master calendar. In this vein, however, we believe that the judge should be vigilant to ensure that he himself did not participate in any of the criminal matters while a police officer. He should also ensure that no favoritism is shown in assigning cases involving friends or prior colleagues on the police force. (*Cf. McCullough* v. *Commission on Judicial Performance* (1984) 49 Cal.3d 186, 194 ["Using the power of the bench to benefit a friend is a case book example of wilful misconduct"]; see also Canon 2B.)

That prior employment as a police officer should not give rise to disqualification here is supported by the analogous determination found in the Judicial Conduct Handbook (Judicial Ethics Update, Dec. 1987), where it is stated:

> "It is not unethical for a former Public Defender newly appointed to the bench to hear cases in which the Public Defender's Office represents the Defendant. However, the judge should not hear any matters in which the judge had any knowledge of the facts or legal issues in the particular cases."

In short, prior public employment does not *per se* constitute a disqualification of the judge where current employees of the agency are involved in a proceeding before the judge.

Accordingly, we conclude that a municipal court judge is not disqualified from handling a criminal master calendar based on the fact that (1) he is married to a deputy district attorney; (2) he previously represented police officers while in private practice; and (3) he was formerly a police officer. He would, however, be required to disqualify himself with respect to any proceeding (1) where his spouse is the lawyer or has had any substantial involvement in the case; (b) where he believes he cannot be impartial; and (3) where an ordinary person would reasonably entertain doubt as to his ability to be impartial.

\* \* \* \* \*