Filed 2/2/26  P. v. Superior Court (Mosby) CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E086782 |
| v. | (Super.Ct.No. RIF1604905) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| MICHAEL MOSBY, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jeffrey B. Jones, Judge.  Petition granted.

Michael A. Hestrin, District Attorney, Emily R. Hanks and W. Matthew Murray, Deputy District Attorneys for Petitioner.

No appearance for Respondent.

Steven L. Harmon, Public Defender, Linda Gail Moore, Melissa K. McConaghay, Deputy Public Defenders; American Civil Liberties Union Capital Punishment Project, Brian Stull, Claudia Van Wyk, Robert Ponce; American Civil Liberties Union Foundation of Southern California, Summer Lacey, Alex Valdez and Isha Vashishtha for Petitioner.

Petitioner, the People of the State of California, in the person of Michael A. Hestrin, District Attorney for the County of Riverside, file a petition for writ of mandate seeking to vacate the order issued on August 12, 2025, denying their request to disqualify the Honorable Samah Shouka from further action in the case of real party in interest Michael Mosby, case No. RIF1604905. Mosby was charged by the Riverside County District Attorney's Office (DAO) with having committed murder in 2014; the People sought the death penalty. Mosby filed a claim under the California Racial Justice Act of 2020 (RJA), and discovery on the RJA claim commenced. Judge Shouka was assigned to Mosby's case and was overseeing the discovery. Judge Shouka was a former deputy district attorney employed by the DAO in the homicide unit. The People sought to disqualify Judge Shouka from presiding over Mosby's case based on several provisions in Code of Civil Procedure section 170.1. The People insist that Judge Shouka had personal knowledge of disputed evidentiary facts; she served as a lawyer for a party in a proceeding that involved the same issues as in the present proceeding; and facts and circumstances exist that would lead a person to reasonably entertain a doubt that Judge Shouka would be impartial in these proceedings. The Honorable

2

Jeffrey B. Jones was assigned to decide the request for disqualification and entered an order on August 12, 2025, denying the request.

The People filed a petition for writ of mandate (Petition) asking this court to reverse the order denying the request to disqualify Judge Shouka and issue a peremptory writ of mandate directing the trial court to vacate its August 12, 2025, order. The People requested a stay of the trial court's order until the issue has been resolved by this court. This court agreed to stay the order and issued an order to show cause why relief should not be granted. We grant the Petition finding that Judge Shouka's previous employment with the DAO might cause a person aware of the facts and circumstances related to Judge Shouka to reasonably entertain a doubt that she would be able to be impartial at the RJA evidentiary hearing within the meaning of Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii).

## FACTUAL AND PROCEDURAL HISTORY

On April 8, 2014, at approximately 2:30 p.m., Darryl King-Divens was riding his bicycle on Hemlock Avenue in Riverside. Mosby drove by King-Divens and shot at him three times and then drove away. King-Divens was declared deceased at the scene. Prior to being apprehended for the above murder, Mosby was involved in killing two other persons and attempting to kill one person in Los Angeles: On April 17, 2014, at approximately 11:30 p.m., Pedro Rodriguez was shot by Mosby over a dispute regarding an acquaintance of Mosby's. On April 23, 2014, Mosby killed victim Quezada by shooting Quezada from his vehicle while Quezada ran down the street. On April 1, 2014, Petitioner attempted to kill Leon Merritt by shooting Merritt while he was

3

seated in his vehicle, but he survived. Mosby was convicted of both murders and the attempted murder on January 24, 2017.

Mosby's case is currently pending an evidentiary hearing under the RJA, specifically under Penal Code section 745, subdivision (a)(3). Mosby is seeking to show that the DAO seeks the death penalty, and files special circumstances and murder charges, more frequently against Black defendants than against White defendants who are similarly situated and commit similar conduct. The parties have not completed exchanging discovery but Mosby has provided statistical information, specifically homicide filings by the DAO for the period between 2006 and 2019.

A.    STATEMENT OF DISQUALIFICATION FILED BY THE PEOPLE AGAINST JUDGE SHOUKA

The People filed a statement of disqualification on June 27, 2025. W. Matthew Murray declared that he was the deputy district attorney assigned to the case against Mosby. He declared that Judge Shouka had personal knowledge of the disputed evidentiary facts in the case within the meaning of Code of Civil Procedure section 170.1, subdivision (a)(1)(A). He also declared that Judge Shouka was a lawyer for a party in a proceeding that involved the same issues as the present proceeding within the meaning of Code of Civil Procedure section 170.1, subdivision (a)(2)(A), and (a)(2)(C). Further, a person aware of the facts and circumstances related to Judge Shouka might reasonably entertain a doubt that Judge Shouka would be able to be impartial within the meaning of Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii). Murray signed the statement of disqualification under penalty of perjury.

4

The People provided that Judge Shouka, while at the DAO, handled all aspects of homicide cases including the prefiling stage, preliminary hearing, trial and sentencing. In addition, she offered advice in homicide investigations, made filing recommendations and provided advice to her colleagues on cases she did not handle herself. Judge Shouka possessed "deep knowledge" of how the DAO decided to file homicide cases. The People insisted the evidence showed that Judge Shouka had been the reviewing prosecutor in 28 cases. The People argued that the primary concern was not that Judge Shouka was actually biased, but rather, there was an appearance of impropriety. The People also claimed the standard for disqualification pursuant to section Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), was relatively low. It only needed to show that a person "might" reasonably entertain a doubt as to the judge's impartiality.

The People argued that a person "might" doubt Judge Shouka's impartiality based on the claim in the RJA motion filed by Mosby asserting that the DAO's decisions in filing murder and special circumstances cases, and in seeking the death penalty, were the result of either explicit or implicit bias, which resulted in racial discrimination. Judge Shouka was involved in many of these decisions while employed at the DAO. A critical issue that Judge Shouka had to resolve in the instant case was whether the prior cases in which she was involved were the result of unbiased case analysis or racial bias. "[A] reasonable, objective third party might legitimately doubt that Judge Shouka could fairly adjudicate the issue."

The People also noted that it was not entirely clear how the evidentiary hearing pursuant to Penal Code section 745, subdivision (a)(3), would be conducted based on the statute being recently enacted. An evidentiary hearing could potentially involve a detailed examination of the facts of prior homicide cases in which Judge Shouka was involved. It was possible that several current and former employees of the DAO would testify, and Judge Shouka may have personal relationships with these persons. The People believed that Judge Shouka, a former prosecutor who handled cases that were the subject of the RJA statistical analysis, should recuse herself in order to avoid any appearance of impropriety.

The People argued that, although Judge Shouka had not worked on Mosby's case while at the DAO, she did have personal knowledge of the facts of cases that were relevant as comparable cases in the RJA motion. Further, Judge Shouka previously served as an attorney for a party in another proceeding with the same issue as this case. Judge Shouka had advised the DAO in the relevant prior cases, warranting her being disqualified. The People concluded, "Judge Shouka's personal knowledge about and active participation in the types of decisions at issue in this case are grounds for disqualification not only because an objective observer might question her impartiality, but because the law specifically bars judges from hearing cases under these circumstances."

The People provided the declaration of Jared A. Haringsma in support of the statement of disqualification. Haringsma was a deputy district attorney employed by the DAO. He was a supervisor at the DAO and had been Judge Shouka's supervisor

6

from 2015 until 2018. He explained that in the DAO, cases that were assigned to deputy district attorneys were handled by the deputy throughout the life of the case. As such, the deputy district attorney assisted with advice during investigations, made recommendations as to whether to file a case, litigated motions and handled trial matters. All charging decisions were presented to the homicide management team for approval. This involved detailed discussions of legal theories, strategy and tactics. The homicide unit was "highly collaborative." Judge Shouka was involved in the collaborative decisions on filing charges in cases. Another document presented was a list of 28 cases that Judge Shouka was involved in during her time with the DAO. In that list, 19 defendants were Hispanic, five were Black, and four were White.

### B. JUDGE SHOUKA'S RESPONSE

Judge Shouka filed her answer to the statement of disqualification. She expressly denied any claim that her service as a deputy district attorney for the DAO precluded her from being impartial and fair in the case or any other case, including any issues raised under the RJA. Judge Shouka stated that she had worked for the homicide unit at the DAO from 2015 until 2018. She noted that the People claimed she had some involvement in the 28 cases that are included in the data supporting Mosby's RJA claims. However, no details were provided with respect to the level of any alleged involvement in the 28 cases, and there is no explanation for how the 28 cases were relevant to Mosby's RJA claims in the instant case. Moreover, Mosby's RJA claims were based on Black defendants being charged more severely than White defendants by

7

the DAO. Of the 28 cases identified by the People, 20[1] of those cases involved Hispanic defendants, and "*none* of the 28 cases is numbered among the 21 comparison cases identified in" Mosby's RJA motion. There was no allegation by the People that the identified cases were statistically significant or relevant to the analysis of Mosby's RJA motion.

Judge Shouka denied that her service as a deputy district attorney disqualified her from presiding over the case. Her knowledge of the procedures and processes of the DAO did not affect her ability to fairly and impartially address the issues in the RJA motion. She had no personal knowledge of the evidentiary facts in the Mosby case and was not a material witness. She further denied that she served as an attorney for a party in another proceeding with the same issues as the instant case within the meaning of Code of Civil Procedure section 170.1, subdivision (a)(1)(C). She had not advised on Mosby's case. Further, she had not advised the DAO on RJA motions as the RJA was not adopted until two years after she was appointed to the bench. Her recusal would not serve the interests of justice.

C.     DENIAL OF THE STATEMENT OF DISQUALIFICATION

The statement of disqualification motion was assigned to Judge Jones and he entered his order on August 12, 2025. Judge Jones had reviewed the statement of disqualification, the points and authorities, the declaration of Haringsma "(including

---

[1] In her declaration, Judge Shouka stated that 20 of the defendants on the list were Hispanic; the list included in the record contains 19 defendants identified as Hispanic.

Exhibit 1)" and the verified answer filed by Judge Shouka. Judge Jones first noted that the statement of disqualification was not a motion. It was a pleading that must allege facts supporting disqualification; conclusions on information or belief were not sufficient to support disqualification.

Judge Jones found that the statement of disqualification contained conclusory statements that Judge Shouka should be disqualified. Judge Jones expressed concern that the points and authorities had been verified by Murray. Judge Jones declined to treat the points and authorities as an evidentiary declaration. Instead, he would limit his analysis to the facts contained in the declaration from Haringsma. The record established that Judge Shouka did not participate in the charging of Mosby.

Judge Jones noted that the People had the burden of proving facts requiring disqualification and "[t]he People do not identify any facts in dispute." He noted that Mosby had performed a statistical analysis showing racially disparate charging decisions. The People alleged that they dispute his contentions but did not "indicate what *facts* are disputed." (Italics in original.) The People may dispute the underlying facts of Mosby's statistical analysis but failed to allege what those underlying facts are, and whether Judge Shouka has personal knowledge of the facts. The People failed to show that Judge Shouka had personal knowledge of disputed evidentiary facts.

Judge Jones also rejected the claim pursuant to Code of Civil Procedure section 170.1, subdivision (a)(2)(A), which disqualifies a lawyer who represented a party or gave advice to a party upon a matter involved in the present proceeding. Judge Shouka was not employed with the DAO when the RJA was adopted. She could not have

9

advised on the impact of the RJA. Further, factual issues raised by Mosby's challenge had not been identified.

Judge Jones also rejected disqualification based on Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), that a person aware of the facts "might" entertain a doubt as to whether the judge may be able to be impartial. Judge Jones concluded, "Accepted as true, none of the contentions of the People appear logically related to the impartiality of Judge Shouka, and thus would not cause a reasonable (logical) member of the public to suspect bias or prejudice."

Judge Jones acknowledged that "future developments" in the case may require the matter to be revisited but that was true in every case. Judge Jones concluded that the People had "failed to meet their burden to show facts requiring disqualification."

**DISCUSSION**

The People seek reversal of the finding by Judge Jones denying the statement of disqualification and issuance of a new order granting the People's request to disqualify Judge Shouka. The People state that the primary assertion by Mosby in the RJA motion is that the DAO seeks the death penalty, and charges special circumstances and murder more frequently against Black defendants than against White defendants who are similarly situated and who commit similar conduct. The People insist that Judge Shouka was involved in the decision to file murder cases in at least 28 cases that were relevant to the time period in the instant case. The issue to be addressed in the RJA evidentiary hearing is whether the filings by the DAO were based on unbiased case analysis or explicit or implicit bias. Further, an evidentiary hearing may involve a

10

detailed examination of facts of prior homicide cases, including those filed by Judge Shouka. The People further contend that Judge Shouka has personal knowledge of disputed evidentiary facts concerning the proceeding and previously served as an attorney for a party in another proceeding with the same issue as the instant case.

In this case, Mosby seeks to prove an RJA violation by proving that "[t]he defendant was charged . . . of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity, or national origin in the county where the convictions were sought or obtained." (Pen. Code, § 745, subd. (a)(3).) "[P]roof of a [Penal Code] section 745, subdivision (a)(3) violation—e.g., differences in seeking or obtaining convictions and differences in imposing sentences—calls for systemic or institutional analyses that are most likely demonstrated at least in part through statistical evidence." (*McDaniel v. Superior Court* (2025) 111 Cal.App.5th 228, 242-243.) The policy and practice of the DAO in charging different defendants, specifically the disparity of the charging of the death penalty, may suggest patterns of institutional bias, explicit bias, historical patterns of bias and systematic bias within the DAO. These policies and practices will be addressed at the evidentiary hearing over which Judge Shouka would be presiding.

Code of Civil Procedure section 170.1 provides for several ways that a judge can be disqualified. Under Code of Civil Procedure section 170.1, subdivision (a)(2)(A), a judge shall be disqualified if they "served as a lawyer in the proceeding, or in any other

11

proceeding involving the same issues he or she served as a lawyer for a party in the present proceeding or gave advice to a party in the present proceeding upon a matter involved in the action or proceeding." Code of Civil Procedure section 170.1, subdivision (a)(1)(A), provides that a judge shall be disqualified if they have "personal knowledge of disputed evidentiary facts concerning the proceeding." Under Code of Civil Procedure section 170.1, subdivision (a)(6)(C)(iii), a judge shall be disqualified if, for any reason, "A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."

Code of Civil Procedure section 170.3, subdivision (d), provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." The facts and circumstances prompting the challenge to a particular judge must be analyzed as of the time the challenge is brought. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 105.) "A party asserting disqualification has a 'heavy burden' and 'must " 'clearly' " establish the appearance of bias.' " (*Bassett Unified School Dist. v. Superior Court* (2023) 89 Cal.App.5th 273, 286.)

"The weight of authority supports that where, as here, the relevant facts are undisputed, a de novo review standard applies to a Code of Civil Procedure section 170.1(a)(6)(A)(iii) challenge to a claimed appearance of partiality." (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 391-392; see also *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 230.)

12

Under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), " '[I]f a reasonable man would entertain doubts concerning the judge's impartiality, disqualification is mandated. "To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person." [Citations.] While this objective standard clearly indicates that the decision on disqualification not be based on the judge's personal view of his own impartiality, it also suggests that the litigants' necessarily partisan views not provide the applicable frame of reference. [Citations.] Rather, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." ' " (*Jolie v. Superior Court* (2021) 66 Cal.App.5th 1025, 1039-1040.)

Based on the RJA being recently adopted, there is little case law discussing whether a former employee of a district attorney's office can serve as a judge on a case involving an RJA motion. The People refer to the opinion by the California Supreme Court Committee on Judicial Ethics Opinions (CJEO) on disqualification of former prosecutors in RJA motions, which was issued on August 7, 2025 (CJEO Opinion).[2] The CJEO was asked by the requesting judge to address the ethical issues regarding disqualification and disclosure requirements in cases involving RJA claims. The requesting judge worked in the county district attorney's office from 1998 through

---

[2] CJEO Formal Opinion 2025-028 California Supreme Court Committee on Judicial Ethics Opinions, *Disqualification and Disclosure Requirements Under the Racial Justice Act* (August 7, 2025) http://www.judicialethicsopinions.ca.gov/wp-content/uploads/CJEO-Formal-Opinion-2025-028-Final.pdf (as of January 29, 2026).

2010. During his time at the district attorney's office, he handled cases involving firearm enhancements. The requesting judge did not serve in an administrative or management capacity while at the district attorney's office. In a case before the now-requesting judge, a defendant was being charged with a firearm enhancement that had a potential exposure of 25 years to life. Defendant's counsel brought an RJA motion seeking discovery back to the year 2000 from the district attorney's office of all cases where firearm enhancements were charged. (CJEO Opinion, at pp. 1-2.) The CJEO was asked whether the requesting judge was required to disqualify from the case, and if not, what must the judge disclose. (CJEO Opinion at p. 2.)

The CJEO noted that a judge need not recuse "merely because the judge, while working as a deputy district attorney, handled cases involving elements that may be subject to discovery under a motion pursuant to the Racial Justice Act." It further noted, "Nevertheless, disqualification is required if the judge's prior prosecutorial involvement was such that a reasonable person, aware of the circumstances, could justifiably doubt the judge's ability to remain impartial." (CJEO Opinion at pp. 2-3.) The CJEO reviewed the applicable laws including the California Code of Judicial Ethics, the RJA and Code of Civil Procedure section 170.1. (CJEO Opinion at pp. 3-7.)

The CJEO reviewed Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(i)-(iii), specifically, subsection (iii), noting, "A judge must also consider whether a person aware of the fact that the judge, as a prosecutor, actively participated in cases involving firearm enhancement allegations might reasonably entertain a doubt that the judge would be able to be impartial in the present proceeding involving a

14

defense request for discovery under the [RJA], which may include cases handled by the judge as a prosecutor, and which may be used to establish a violation of the [RJA] in the current case." It rejected that the requesting judge was required to recuse himself. It considered that the requesting judge as a deputy district attorney did not participate in the cases more than any other deputy in the office. Further, "any overlap between the current case before the judge and previous cases handled by the judge as a prosecutor is that they involve similar enhancement charges. The risk of bias or the appearance of bias is low." (CJEO Opinion at pp. 13-14.) The CJEO did note, "[T]he result may be different if the requesting judge, as a former prosecutor, participated in developing or directing the district attorney's policy regarding charging firearm enhancements, or was directly involved in making charging decisions, as opposed to following office policy. These facts, not present here, may increase the likelihood that a person aware of the facts could reasonably entertain a doubt as to the judge's ability to remain impartial." (CJEO Opinion at p. 14.)

Here, Haringsma declared that Judge Shouka was present at staffing meetings where the decision whether to charge a defendant with murder was being discussed. Judge Shouka, if she were handling a case, would make a recommendation whether to file charges. The decision whether to file the recommended charges was made at an internal meeting called "a staffing." The recommendation to file would be considered and then approved by a manager. Haringsma also declared that there was a collaborative process in which all the homicide prosecutors would discuss their cases and seek advice. Judge Shouka admitted she was present in these staffing meetings

15

where homicide cases were discussed in detail, "including charges, legal theories and strategies." The decisions on charges for homicide cases were being made by the DAO while Judge Shouka was present. Judge Shouka also admits that she made charging decisions while at the DAO. As stated by the People, ". . . her actions as a filing and trial homicide prosecutor are intertwined with the institutions as a whole." Judge Shouka insists in her answer that none of the cases she was involved with were listed as cases that Mosby intended to use to compare his charges. However, the issue raised by Mosby is how the DAO chooses to file murder charges, and seek the death penalty, and whether there is implicit or explicit bias. Judge Shouka was present at staffing meetings where these decisions were being discussed, and she regularly recommended charges that should be brought in homicide cases. Her role was more than just following "office policy," and she was directly involved in making charging decisions.

The People only had to show in their statement of disqualification that a person "might" reasonably entertain a doubt that Judge Shouka would be able to be impartial. Here, Judge Shouka made recommendations as to filing charges in homicide cases during the relevant period of time involved in the RJA motion, and was present at staffing meetings where decisions were made in other cases as to the charges to be filed. While we do not find that Judge Shouka was actually biased in this case, a person aware of these facts might reasonably entertain a doubt as to whether Judge Shouka could be impartial in determining if the DAO had a pattern of institutional bias, explicit bias, or historical and systematic bias in filing homicide charges, when she was personally involved in these decisions while at the DAO.

16

We will direct the superior court to vacate its August 12, 2025, order denying the People's statement of disqualification against Judge Shouka and enter a new and different order granting the People's statement of disqualification.[3]

## DISPOSITION

The petition for writ of mandate is granted. We direct the Riverside County Superior Court to vacate its order issued by Judge Jones on August 12, 2025, denying the People's statement of disqualification and enter a new and different order disqualifying Judge Shouka. The stay order issued October 6, 2025, is dissolved.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

CODRINGTON

J.

MENETREZ

J.

---

[3] Having found that the statement of disqualification should have been granted pursuant to Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii), we need not address the additional grounds of disqualification pursuant to Code of Civil Procedure section 170.1, subdivisions (a)(1)(A) and (a)(2)(A).