Filed 2/11/14  Cook v. Smith CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| CONSTANCE COOK,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>GWENDOLYN SMITH,<br><br>　　　　Defendant and Appellant. | A130939<br><br>(Sonoma County<br>　Super. Ct. No. SCV-247027) |

In this landlord-tenant action, defendant Gwendolyn Smith appeals from a judgment in which plaintiff Constance Cook was awarded the aggregate sum of $49,635.66 (past due rent for the period from July 6, 2009 to March 9, 2010, hold over damages for the reasonable rental value from March 10, 2010 to August 10, 2010, the cost of witness fees, and damages pursuant to Code of Civil Procedure section 735), and the court dismissed Smith's cross-complaint alleging causes of actions for, among other things, breach of warranty of habitability, retaliatory eviction, and personal injury and property damages.  On appeal, Smith challenges the judgment on various grounds, none of which requires reversal.  Accordingly, we affirm.

1

# FACTS[1]

## A.    Background

On February 19, 2009, after an inspection Smith took possession and began to live in a rental unit that was owned by Constance Cook, as trustee of the 2004 Constance Cook Revocable Trust.  Smith stopped paying rent in July 2009.

On March 15, 2010,[2] Cook filed an unlawful detainer action against Smith based on a notice to quit for failure to pay rent.  The trial court denied Smith's motion to quash service and directed her to file an answer.  Smith's requests for writ relief challenging the denial of her motion to quash were denied.  After she unsuccessfully sought a change of venue, Smith filed an answer on July 26, and the next day, requested the court to schedule a date for trial.  On July 27, Cook propounded discovery requesting documents and answers to interrogatories from Smith.

On August 10, the parties appeared before Hon. Gayle C. Guynup.  Cook was represented by counsel and Smith appeared in propria persona.  At that time, the judge announced the trial would start the next day at 9:00 a.m., a jury panel had been requested, and the parties were directed to report at that time.  Smith stated she had surrendered possession of the premises and asked the court to return the case to the regular civil calendar.  Cook's counsel confirmed that possession was no longer at issue and the case should be transferred to a regular civil calendar.  The court agreed, vacated the trial date, and directed Cook's counsel "to file an at-issue" memorandum identifying pending issues.  The case was set for a "short cause hearing" on September 1 at 8:30 a.m.  On August 23, Smith made her first request to amend her answer and file a cross-complaint by filing a "notice of motion," which was denied by the court.  Two days later, Cook filed a trial brief and witness list.  On August 30, Smith filed "an ex parte application"

---

[1]    The facts are taken in part from the trial court's statement of decision and the register of actions.  The record on appeal does not include any of the parties' pleadings or motion papers filed in the trial court or a copy of the reporter's transcript of the hearing held on September 1, 2010.

[2]    All further dates are in the calendar year 2010.

requesting reinstatement of a jury trial and a trial continuance, which was denied by the court.

On September 1, the case appeared on the "short cause master calendar" before Judge Mark Tansil. Cook was present with her counsel. Smith was not present, but counsel Duane Light specially appeared for her. Light said that Smith was receiving emergency surgery that day in Los Angeles, and he asked the court to continue the trial. Over Cook's objection, the court continued the trial to October 27, and directed that at that time Smith was to submit proof of her medical emergency on September 1. Two days before the scheduled trial date, on October 25, Smith made a second request to amend her answer and file a cross-complaint by filing "an ex parte application," which was denied by the court.

## B.     Trial Proceedings

On Wednesday, October 27, the parties appeared in court before Judge Tansil. Cook was represented by counsel and Smith appeared in propria persona. When the case was first called, the court stated, "So th[is] case will be tried today." Smith replied, "Your Honor, Gwendolyn Smith for Smith here, and it cannot be tried today." The court stated, "We will not talk about that right now. We'll come back to that. It will be tried today." The court heard several other matters, and then recalled the case "for trial." Cook's counsel responded that all of her witnesses were under subpoena but not all of them had yet arrived in court. Smith asserted she was "completely unprepared for trial," she had been in Southern California undergoing some medical treatment and had since "come back," moved and enrolled her son in a new school. She further claimed she had filed several requests to exercise her statutory right to amend her answer. At that point, the court asked Smith to "[p]lease stop." The court explained that the case had been continued for about six weeks to give Smith plenty of time to prepare for trial and to make any amendments that were necessary in what was "a pretty simple case that came out of an unlawful detainer department." The court asked Smith for proof demonstrating that on September 1 at the call of the short cause calendar she was unable to appear based on a medical emergency. Smith proffered a letter, which the court found did not

3

demonstrate that Smith had a medical emergency on September 1. Smith offered to get another, more detailed letter, and apologized if the court found the proffered letter insufficient. The court denied Smith's request to supplement the letter, noting the court needed to move on.

The court then asked Smith to explain why the trial could not commence that day. Smith explained that she had sought to amend her pleadings, but the court had improperly treated the motion as an application requesting ex parte relief and denied that relief. The court confirmed it had denied the motion "because it was not presented in a proper manner. This was presented ex parte. It is not an emergency. It should have been presented in a normal pleading fashion with notice to the other side," and had the motion been filed in a timely manner, the court would have considered it. The court further found that during the six-week continuance since September 1, Smith had made no efforts to bring the issue of amending her pleadings to the attention of either Cook or the court until just a few days before trial, which was "dilatory conduct" and "prejudicial" to Cook who had been ready for trial on September 1. When Smith complained that a six-week continuance was insufficient, the court replied that on September 1 Smith's attorney had not said anything about the length of the continuance granted by the court. Smith did not reply to the court's inquiry as to what discovery she had done in the six weeks prior to the October 27 trial date. Instead, she described her claims against Cook and what would be shown "in discovery," and again explained why she had not retained counsel and was not otherwise prepared for trial. The court replied, "I do understand this point of view. Have a seat. We'll proceed with the trial. We certainly want you to stay." The court further informed Smith that she might be allowed to amend her answer based on the evidence that was presented at trial. However, the court would not continue the trial because Smith had been completely dilatory and dishonest regarding a medical emergency that caused a six-week continuance during which time Smith took no action and she came in at the very last minute asking for another continuance.

After further colloquy between the court and Smith, the court stated, "If you want to have a seat and relax we'll proceed on the hearing on the facts. At that point, Smith

4

left the courtroom without comment. The court stated: "Well, this is an unusual case. The Defendant has left the courtroom. I assume she is abandoning the hearing for whatever reason. I never had that happen before, but I've been doing this for a long time and unusual things occur. So at this time [we] will proceed with hearing evidence." The court ruled it would hold a trial in absentia because Smith "has voluntarily left the trial. I tried to get her to stay but apparently all she wants is a continuance, and she does not want to present information or question witnesses or possibly amend her answer based upon the state of the evidence in the trial. So that is her choice. So we'll proceed with a court trial."

During Cook's examination by her counsel, Smith reentered the courtroom. The court asked Smith if she wanted to sit at the defense table and participate. Smith replied, "Sure, Your Honor. The reason I'm back in the courtroom -- I spoke with my attorney on [a related] case, which is so closely allied to this case, and which you were excused for prejudicial conduct, and [the attorney] expressed some concern that on appeal this entire process would be overturned." Although the court attempted to stop Smith, she continued: "That if I left the courtroom that might not happen. So I am back here to hear you take one-sided testimony while I'm here with one witness and have not been given the amended complaint and accused of dilatory action even though I offered to present the Court with further medical documentation with [regard] to the emergency." Smith again asked the court to take the case off calendar, to which the court replied, "We've been through that before." When Smith continued to object, the court interrupted and said: "You need to stop talking. We are right in the middle of some testimony. So you are welcome to be here. You can listen and ask questions later." As Cook's counsel continued his examination of Cook, Smith again left the courtroom without comment. At that point the court stated, "If I can say again, Ms. Smith has left the courtroom. Maybe she will be coming back. I don't know. She did leave."

At the conclusion of Cook's examination by her counsel, the court asked the bailiff to see if Smith was outside the courtroom. After a few minutes, Smith returned to the courtroom. The court asked Smith if she wanted to ask Cook any questions. Smith

replied that she was sorry, she was "consulting with the attorney on another matter and I missed [Cook's] testimony. If you can be so kind to recap the highlights of it, I would appreciate that." The court declined to recap Cook's testimony because Smith had chosen to voluntarily leave the courtroom during the witness's testimony. Because Smith could call Cook as her own witness, the court indicated it would be "a little bit liberal in allowing questions" that might exceed the scope of Cook's direct examination. During Smith's examination of Cook, the court both sustained opposing counsel's objections and sua sponte informed Smith that some of her questions were inappropriate as they assumed facts not in evidence, sought to elicit hearsay, were argumentative, or asked the witness to speculate about certain matters.

At the afternoon session on October 27, Cook completed her testimony, and she called as witnesses Robert Herr, an environmental health specialist for the Sonoma County Permit Resource Management Department; Annette Hill, a laboratory manager at Brelje & Race Laboratories; and Smith as an adverse witness pursuant to Evidence Code section 776. After Cook rested her case in chief, Smith called as witnesses Devorah Blum and Zeus Harrison Smith, Smith's 16-year-old son.

At the beginning of the second trial day, Thursday, October 28, the court granted Smith's request to file her cross-complaint.[3] When Smith attempted to discuss the admission into evidence of other documents, the court admonished Smith that she was not running the courtroom and she needed to then finish questioning her son. Smith complied, and continued her examination of her son. Smith also called Cook as an

---

[3]    The court's statement of decision indicates that in the cross-complaint Smith alleged causes of action for "(1) Breach of Warranty of Habitability, (2) Retaliatory Eviction, (3) Breach of Covenant of Quiet Enjoyment of Lease Premises, (4) Fraudulent Inducement, (5) Constructive Eviction, (6) Forcible Detainer, (7) Breach of Fiduciary Duty to Protect Against Criminal Acts of Third Parties, (8) Conversion, (9) Trespass, (10) Abuse of Process, (11) Defamation Per Se, (12) Assault and Battery, (13) Intentional Infliction of Emotional Distress, (14) Conspiracy, (15) Personal Injury and Property Damage from Toxic Mold, (16) Personal Injury from Carbon Monoxide Poisoning, (17) Personal Injury and Property Damage from Lead Poisoning, and (18) Personal Injury from Hydrogen Sulfide and Ammonia."

adverse witness pursuant to Evidence Code section 776. At the end of the day the court asked the parties to indicate the number of witnesses each side expected to call at the next court session on Monday, November 1. Smith anticipated that she would need time to conclude her examination of Cook, and, then she planned to call eight additional witnesses. The court told Smith that on Monday, November 1, she would be required to be fully prepared to present witnesses back to back so that the case could be concluded.

On the third day of trial, Monday, November 1, before the commencement of any testimony, Smith again asked the court for a continuance. Smith asserted she had been unable to subpoena certain witnesses to appear at trial. After Smith stated the proposed testimony of one of the witnesses, the court replied, "Please stop making speeches. We are not continuing the trial." The court then heard from Deputy County Counsel Debbie Lathum, who stated that on Friday afternoon, October 29, Smith had attempted to subpoena a county employee but the notice was insufficient. Smith argued the notice was sufficient because she had not served a subpoena duces tecum. Smith also asked for a continuance because a "second expert witness," who had been properly subpoenaed, was not in court. The court replied, "Stop. Please stop. You were not prepared going into this. You are trying to get witnesses in with inadequate notice. That is why the [c]ounty [counsel] was here this morning. In any event, we need to finish [the] examination." When Smith asked the court why it had denied her a continuance to get expert witnesses, the court replied that "[n]o good cause" had been proffered for the continuance. The trial proceeded, with Smith and Cook's counsel completing their examinations of Cook. The court denied Smith's request to recall as witnesses her son and Blum because they had already testified concerning the issues before the court.

At the conclusion of closing arguments, Smith stated she had an emergency and she was sure that her presence was no longer required in the courtroom and she thanked the court for its impartial hearing of the matter. When the court asked if Smith was "leaving again," Smith said, "Yes, Your Honor, I know that I have preserved my objections on appeal and that what the Court has done today is reversible error." The court then stated that Smith was "again, abandoning the court," and the court would take

7

no further argument. The court issued its ruling in favor of Cook on her complaint, and found against Smith on her cross-complaint. After the court issued an extensive statement of decision, it entered a judgment in favor of Cook on her complaint and against Smith on her cross-complaint. Smith timely appeals.

## DISCUSSION

Smith presents several arguments in support of her claim that the judgment should be reversed and the matter remanded for a jury trial. As we now discuss, we conclude her contentions are without merit.

## I. Trial Court's Denial of Smith's Requests for Trial Continuances

Smith argues the trial court's denials of her requests for continuances were "reversible error per se" because the time period from August 10, 2010 to October 27, 2010, was insufficient as a matter of law to allow her to retain counsel or properly prepare for trial and present essential expert testimony. We conclude Smith's argument is unavailing. "Although continuances of trial are disfavored, each request for a continuance must be considered on its own merits. The court may grant a continuance only on an affirmative showing of good cause requiring the continuance." (Cal. Rules of Court, rule 3.1332(c).) As we now discuss, we conclude Smith has failed to demonstrate that the trial court erred in its rulings addressing her requests for continuances.

On August 30, twenty days after the action was returned to the regular civil calendar, Smith made her first request for a trial continuance by filing an ex parte application, which was denied by the court. However, Smith has elected to proceed in this appeal without requesting that the clerk's transcript include a copy of her ex parte application filed on August 30. In the absence of that application, we cannot conclude the trial court erred in denying the requested relief for a trial continuance at that time. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575 (*Ballard*) ["[i]t is well settled, of course, that a party challenging [an order] has the burden of showing reversible error by an adequate record;" in the absence of an adequate record "we have no occasion to consider further the merits"].)

8

Thereafter, on September 1, the trial judge granted Smith's request for a continuance and the trial was continued for six weeks until October 27. Smith's counsel, who specially appeared at that time, raised no objection to the length of the continuance on the ground that it was insufficient to allow Smith to retain counsel or secure leave to amend her answer, conduct discovery, and subpoena witnesses. Consequently, Smith's challenge to the six-week trial continuance on the ground of insufficiency is forfeited. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 ["[a]n appellate court will ordinarily not consider . . . erroneous rulings, in connection with relief sought . . ., where an objection could have been but was not presented to the lower court by some appropriate method;" "[t]he circumstances may involve . . . acquiescence as to be appropriately classified under the headings of estoppel or waiver;" "[o]ften, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial"].)

We are also not persuaded by Smith's arguments challenging the denial of her request for a trial continuance on October 27. Smith contends she was entitled to a continuance at that time as a matter of law because "[i]n no universe" could the six-week continuance "be held to be sufficient time to prepare for trial on an action [in which] discovery had yet to be conducted, counterclaims were at issue, no trial conference had yet been held, no witnesses subpoenaed – in short, there was no time at all calendared for the properly requested . . . jury trial." However, once Smith learned that the trial had been continued for only six weeks, she could not rely on her belief that six weeks was insufficient. Instead, she was required to timely request an additional continuance with a showing of good cause supported by written declarations. (Cal. Rules of Court, rule, 3.1332(b) [4].) Smith did not make the requisite written request for a continuance. She waited until the date set for trial, at which time her request was made "without submitting

---

[4] California Rules of Court, rule 3.1332(b), reads: "A party seeking a continuance of the date set for trial . . . must make the request for a continuance by a noticed motion or an ex parte application under the rules . . . with supporting declarations. The party must make the motion or application as soon as reasonably practical once the necessity for the continuance is discovered."

a written declaration or providing prior notice [to either the trial court or Cook]. Although a trial court *may* excuse failure to comply with the requirement of a declaration in support of a motion for continuance [citations], the court is not required to do so." (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 172 (*Mahoney*).) [5]

In all events, Smith's overarching argument that the denial of a continuance on October 27 violated her right to due process is based on an incorrect legal premise. "[T]here is no right to a continuance as a matter of law." (*Fisher v. Larsen* (1982) 138 Cal.App.3d 627, 648.) Nor is there a "policy . . . of indulgence or liberality in favor of parties seeking continuances." (*Mahoney, supra,* 223 Cal.App.3d at p. 171, and the cases cited therein.) More importantly, " '[i]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel.' [Citation.] Instead, '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*People v. Howard* (1992) 1 Cal.4th 1132, 1171-1172.) As an appellate court, we cannot disturb a trial court's denial of a continuance " 'except upon a clear showing of an abuse of discretion.' " (*Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 448.)

Several factors support the trial court's refusal to grant Smith's request for a continuance on October 27. First, in the trial court Smith made no attempt to explain her failure to file a written request for a continuance or why she should be excused from doing so. Second, the trial court was free to reject Smith's arguments that she proffered on October 27. (*Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660 ["[p]rovided the trier of

---

[5]     Smith's arguments challenging the denial of her pretrial requests to file amended pleadings are not properly before us. If she wanted us to consider her arguments that there was no merit to those denials, she was "obligated to provide this court with the documents necessary to make such a determination." (*United Teachers of Ukiah v. Board of Education* (1988) 201 Cal.App.3d 632, 643, fn. 8.) Because Smith did not request that the clerk's transcript include her pretrial motion papers seeking to amend her pleadings, we cannot conclude those denials were erroneous. (*Ballard, supra,* 41 Cal.3d at pp. 574-575.)

fact does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted"].) Third, the trial court reasonably found that during the six-week continuance (September 1 to October 27), Smith had not made diligent efforts to retain counsel and prepare for trial (by securing leave of the court to amend her answer, conducting discovery, and subpoenaing expert witnesses). The register of actions shows that during the six-week continuance Smith filed one ex parte application, two days before the date set for trial, seeking only leave to amend the answer and to file a cross-complaint. Fourth, the trial court could consider that a continuance would be prejudicial to its calendar as the case would have to be rescheduled at some later indeterminate time. Fifth, the trial court could consider that a continuance would be prejudicial to Cook who had been prepared for trial on September 1, and again prepared for trial on October 27 and had subpoenaed witnesses to appear that day. Accordingly, we conclude Smith has failed to demonstrate that the trial court abused its discretion or violated her due process rights in proceeding with the trial on October 27.

## II.     Trial Court's Denial of Smith's Request for a Jury Trial

Smith's contention that the trial court improperly denied her request for a jury trial is not supported by the record. At the morning session of the first day of trial, after the trial judge denied Smith's request for a continuance and said the case was going to proceed "on the hearing on the facts," Smith left the courtroom without comment and gave no indication she was planning to return. Because Smith made no request for a jury trial, the trial court was not required to either empanel a jury or retain any prospective jurors and could consider Smith's conduct as a waiver of a jury trial. (Code Civ. Proc., § 631, subd. (f)(1) [a party waives a jury trial "[b]y failing to appear at the trial"]). The trial judge then appropriately proceeded with a bench trial. When Smith returned to the courtroom, she raised several objections and engaged the trial judge in a lengthy colloquy. But, at no time did she object to the trial proceeding without a jury. Instead, Smith sat through a portion of Cook's direct examination, left the courtroom again without comment, returned to the courtroom after Cook had completed her direct examination, and questioned Cook on cross-examination. When the trial judge

11

reconvened the court for the afternoon session, Smith apparently recognized that her conduct during the morning session may have been considered a waiver of a jury trial. She stated for the first time that she had forgotten to remind the court that she had filed motion papers seeking to have a jury trial and at no time did she waive a jury trial. The court replied, "We had a panel on hold. No one requested [a] jury and you clearly waived that issue. So we are going forward." [6] Smith insisted that any doubt about whether she waived her right to a jury trial should be resolved in her favor. The court replied, "Stop. You actually left the courtroom and were gone for a period of time, abandoning the testimony by the Plaintiff. Then you suddenly, after talking to a lawyer who is not here, came back in. Clearly, you waived any request for a jury today." At the end of the second day of trial, October 28, 2010, Smith again brought up the matter of a jury trial when discussing the witnesses that she wanted to call to testify at trial. The court again explained, "Ma'am, you left the courtroom. You abandoned the trial. We started a court trial and you left." Smith replied, "that's not my recollection of the events," to which the court responded, "That's what happened." To which Smith replied, "And I returned because I did not want you to slam dunk a default judgment." When Smith again asserted that she never waived a jury trial, the court interrupted and said, "You did, in fact, abandon the trial. We made a finding on the record after you said you were leaving that we were going to do a court trial." Smith replied, "After I left, I came back in and after the first witness was completely finished on direct and rejoined a trial in progress. So at that point – I needed to take a break at this point." On this record, we conclude the trial court properly ruled that Smith had waived her right to a jury trial by her conduct during the morning session of the first day of trial.

Concededly, a court "may, in its discretion upon just terms, allow a trial by jury although there may have been a waiver of a trial by jury." (Code Civ. Proc., § 631, subd.

---

[6]     Contrary to Smith's appellate contentions, during the first few minutes of the morning session before she left the courtroom the trial judge was under no obligation to tell her that he had a jury panel on hold and the trial judge did not prevent her from requesting a jury trial after the denial of her request for a continuance.

(g).)  However, "[b]cause the matter is one addressed to the discretion of the trial court, that court's denial of a request for relief of jury waiver cannot be reversed in the absence of proof of abuse of discretion." (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)  "In exercising its discretion, a trial court may consider diverse factors: '[D]elay in rescheduling the trial for jury, lack of funds, timeliness of the request and prejudice to all the litigants.'  [Citations.]  The court may also consider, 'prejudice to . . . the court, or its calendar' [citation], the reason for the demand, i.e. whether it is merely a 'pretext to obtain continuances and thus trifle with justice' [citation], whether the parties seeking the jury trial will be prejudiced by the court's denial of relief [citation] and whether the other parties to the action desire a jury trial." (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1176.)  In this case the trial court could reasonably find that Smith was not entitled to be relieved of her jury waiver for several reasons.  By the time Smith raised the issue of a jury trial, the trial judge had commenced a bench trial, and Cook had presented a portion of her case in chief and subpoenaed witnesses to appear at the afternoon session of the trial.  Granting Smith relief from her waiver would have caused prejudice to both the court and its calendar and Cook.  (*Id*. at p. 1176.)  Had the court granted Smith's request, the matter would have had to be continued to allow for the empanelling of a jury and for Cook to subpoena witnesses for a new trial.  Additionally, "[t]he timing of [Smith's] request for relief from [her] jury waiver suggests that it was a ploy to obtain a continuance.  [Her earlier request for a] continuance[ ] had been denied. . . .  What better way to compel a continuance than to demand a jury trial?  The implication is plain, and the trial judge most likely perceived it:  [Smith's] request for relief from [her] waiver was a back door path to a continuance.  The trial court was justified in denying [Smith's] relief on the basis that [her] request was being used as a 'pretext to obtain [a] continuance[ ] and thus trifle with justice.' " (*Id.* at pp. 1177-1178.)  Accordingly, we conclude that "[t]here existed in this case 'reasonable or even fairly debatable justification, under the law, for the action taken.' [Citation.]  The trial court exercised its discretion in the context of what it perceived to be these justifications.  It did not act arbitrarily; rather it proceeded reasonably in making its decision." (*Id*. at p. 1178.)

13

### III. Smith's Claims of Judicial Bias

Finally, we are not persuaded by Smith's argument that the trial proceedings were tainted by judicial bias. Smith did not file a statutory disqualification motion against Judge Tansil in this action. Consequently, she has forfeited any arguments that either Judge Tansil was *statutorily* disqualified, or that Judge Tansil was *statutorily* precluded from accepting a trial assignment of this case because Smith had previously disqualified the judge in another case. (See *People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*); see *People v. Williams* (1997) 16 Cal.4th 635, 652 & fn. 5.) Accordingly, we evaluate Smith's claims of judicial bias based on whether "the due process clause require[s] judicial disqualification based on the mere appearance of bias." (*Freeman, supra*, at p. 1000.)

In contrast to a statutory disqualification of a trial judge for the reason that "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial" (Code Civ. Proc., § 170.1 subd. (a)(6)(A)(iii)), "the United States Supreme Court's due process case law focuses on actual bias. This does not mean that actual bias must be proven to establish a due process violation. Rather, consistent with its concern that due process guarantees an impartial adjudicator, the court has focused on those circumstances where, even if actual bias is not demonstrated, the probability of bias on the part of the judge is so great as to become 'constitutionally intolerable.' (*Caperton v. A.T. Massey Coal Co.* [(2009) 556 U.S. 868, 877] (*Caperton*).) The standard is an objective one." (*Freeman, supra*, 47 Cal.4th at p. 1001.) "Where only the appearance of bias is at issue, a litigant's recourse is to seek disqualification under state disqualification statutes: 'Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution.' ([*Caperton, supra*,] 556 U.S. at p. [ 890].) Finally, the [*Caperton*] court emphasized that only the most 'extreme facts' would justify judicial disqualification

14

based on the due process clause.  (*Id*. at pp. [886-887].)"  (*Freeman, supra,* 47 Cal.4th at p. 996).[7]

We conclude that "[t]his case does not implicate any of the concerns – pecuniary interest [*Tumey v. Ohio* (1927) 273 U.S. 510, 523], enmeshment in contempt proceedings [*In re Murchison* (1955) 349 U.S. 133, 136-138], or the amount and timing of campaign contributions [*Caperton, supra*, 556 U.S. at p. 883-884] – which were the factual bases for the United States Supreme Court's decisions in which it found that due process required disqualification."  (*Freeman, supra*, 47 Cal.4th at p. 1006.)  We also reject Smith's claim that her prior disqualification of Judge Tansil in another case, standing alone, constitutes "the kind of showing that would justify a finding that [her] due process rights were violated."  (*Ibid*.)  Smith knew she had a statutory right to disqualify Judge Tansil and failed to pursue it.  "Having forfeited that remedy, she cannot simply fall back on the narrower due process protection without making the heightened showing of a probability, rather than the mere appearance, of actual bias to prevail."  (*Ibid.*)

Our review of the record does not support Smith's claim of judicial bias or prejudice in violation of her due process rights.  " 'To ensure that the proceedings appear to the public to be impartial and hence worthy of their confidence, the situation must be viewed through the eyes of the objective person.'  [Citations.]  While this objective standard clearly indicates that the decision on disqualification not be based on the judge's personal view of his own impartiality, it also suggests that the litigants' necessarily partisan views not provide the applicable frame of reference."  (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104, fn. omitted.)  " '[O]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even

---

[7]    We decline Smith's request that we consider *People v. Freeman* (2007) 147 Cal.App.4th 517, which was reversed by our Supreme Court's opinion in *Freeman, supra*, 47 Cal.4th 993.  Once an opinion is no longer published, it must not be cited or relied by a court or a party in any other action.  (See Cal. Rules of Court, rules 8.1105(e)(1) ["an opinion is no longer considered published if the Supreme Court grants review . . ."]; 8.1115(a) ["an opinion of the California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"].)

whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [Smith] a fair, as opposed to a perfect, trial.' " (*People v. Snow* (2003) 30 Cal.4th 43, 78 (*Snow*), quoting *United States v. Pisani* (2d Cir. 1985) 773 F.2d 397, 402 (*Pisani*).)

Applying the above law, we first conclude that no charge of bias or prejudice can be based on the trial judge's rulings denying Smith a trial continuance and a jury trial. (*McEwen v. Occidental Life Ins. Co*. (1916) 172 Cal. 6, 11.) We also see no merit to Smith's contention that the trial proceedings evidence that the trial judge's "biased conduct" went "well beyond any characterization of judicial control of the courtroom." A party appearing in propria persona is subject to the same rules and restrictions of an attorney. Thus, " '[i]t is well within [a trial court's] discretion to rebuke [a party appearing in propria persona], "sometimes harshly, when that [party] asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior.' " (*Snow, supra,* 30 Cal.4th at p. 78, quoting *United States v. Donato* (D.C. Cir. 1996) 99 F.3d 426, 434.) A review of the record here reveals nothing improper about Judge Tansil's attempts to stop Smith from talking at certain portions of the proceedings. Nor do we see anything improper about Judge Tansil's sua sponte objections or comments addressing the inappropriate manner in which Smith framed her questions to witnesses. (*Pisani, supra*, 773 F.2d at p. 402 [if a party "pursues an objectionable line of questioning, he can hardly cry 'foul' when the judge sustains [an opposing party's] objection *or even excludes the testimony sua sponte*" (italics added)].) When viewing the exchanges between Judge Tansil and Smith, either separately or together, we do not believe the effect of the court's remarks was to "discredit" Smith "or create the impression it [was] allying itself with" Cook, and "we perceive nothing that crossed the line into improper behavior." (*People v. Carpenter* (1997) 15 Cal.4th 312, 353.)

**DISPOSITION**

The judgment is affirmed.  Constance Cook is awarded costs on appeal.

$\underline{\hspace{5cm}}$
Jenkins, J.

We concur:

$\underline{\hspace{5cm}}$
McGuiness, P. J.

$\underline{\hspace{5cm}}$
Pollak, J.