Filed 3/4/14

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KENNETH WECHSLER, | D064919 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. DN143293) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| KIMBERLY WECHSLER, | |
| Real Party in Interest. | |


Petition for writ of mandate from an order of the Superior Court of San Diego County, Jeffrey B. Barton, Judge. Petition denied.


Hagar & Cotten and Cary L. Cotten for Petitioner.

No appearance for Respondent.

Law Office of Alexandra O'Neill and Alexandra O'Neill; Kimberly Wechsler, in pro. per., for Real Party in Interest.

Kenneth Wechsler (Kenneth) filed a writ petition challenging an order denying his motion to disqualify San Diego County Superior Court Commissioner Patti Ratekin from presiding over the dissolution action between Kenneth and his former wife, Kimberly Wechsler (Kimberly). Kenneth moved to disqualify Commissioner Ratekin after learning the commissioner agreed to officiate at Kimberly's counsel's wedding while postjudgment support matters were pending before the commissioner. He sought the disqualification under Code of Civil Procedure section 170.1, which provides a judge shall be disqualified if "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii) (§ 170.1(a)(6)(A)(iii)).)

Commissioner Ratekin filed a verified answer denying there were grounds for disqualification, and the disqualification motion was assigned to Superior Court Judge Jeffrey Barton. Judge Barton concluded Kenneth did not meet his burden to show a statutory basis for disqualification and denied the motion. Kenneth challenges the ruling in this writ proceeding.

After considering the particular facts before us and applicable law, we determine Commissioner Ratekin's conduct was not a disqualifying event. Under circumstances similar to those here, the California Supreme Court found no appearance of partiality where a trial judge officiated at the wedding of the prosecutor's daughter several months before the judge presided over the defendant's death penalty trial. (*People v. Carter* (2005) 36 Cal.4th 1215, 1240-1244.) Following *Carter,* we conclude that when a judge has no personal or social relationship with the attorney and the judge's only role at the

2

wedding is that of an officiant, disclosure is required (Cal. Code Jud. Ethics, canon 3(E)(2)(a)), but disqualification is not mandated absent additional facts.

FACTUAL AND PROCEDURAL SUMMARY

The Wechsler marriage dissolution action was initially filed in September 2006. More than three years later, in January 2010, the matter was assigned to Commissioner Ratekin to preside over postjudgment custody and support matters. During the next several years, the parties had numerous disputes. In 2012, Kimberly filed a motion to increase support payments and both parties raised numerous other related issues. Kenneth was represented by Cary Cotten, and Kimberly was represented by Alexandra O'Neill. After many continuances and the appointment of an accounting expert, the commissioner scheduled a hearing for November 1, 2013 to resolve pending motions.

One week before the November 1 scheduled hearing, both counsel appeared in court for an ex parte hearing regarding Kenneth's request to continue the hearing. As they were waiting to be called, O'Neill told Cotten that Commissioner Ratekin would be officiating at her wedding later in the year (in December 2013). When the Wechsler matter was called, Commissioner Ratekin did not mention her upcoming participation in the wedding, and neither party raised the issue. The court denied Kenneth's continuance request.

Two days later, on October 25, Kimberly filed a declaration and motion seeking additional attorney fees and costs. Three days later, Kenneth's counsel filed a verified statement of disqualification, asserting that Commissioner Ratekin should be disqualified for cause because the commissioner's agreement to officiate in counsel's wedding might

3

lead a person aware of the facts to entertain a doubt about the commissioner's ability to be impartial in handling the case. (§ 170.1(a)(6)(A)(iii).) Specifically, Cotten claimed "any average person would entertain doubts when learning that the Commissioner was personally close enough to one of the attorneys to agree to officiate her wedding while at the same time presiding over a case involving that attorney."

Commissioner Ratekin filed a verified answer denying there were grounds for disqualification. Commissioner Ratekin said she did not have a personal relationship with O'Neill, and she could and would remain impartial in the action: "I have been acquainted with [Kimberly's] counsel, Ms. O'Neill, for the past few years through her appearances in my court and through our respective appearances at professional legal functions. I am not otherwise acquainted or 'personally close' with Ms. O'Neill. [¶] . . . Approximately one month ago while I was conducting a settlement conference in another case in which Ms. O'Neill and another attorney appeared as counsel of record, Ms. O'Neill asked if I would perform her wedding ceremony later this year and I agreed. My intention is solely to perform the wedding ceremony and not to stay for any reception. [¶] . . . When counsel thereafter appeared ex parte in this case on October 23, 2013, the subject of my performance of the wedding for Ms. O'Neill did not come to my mind. As a result, I did not disclose that I am scheduled to officiate at the ceremony. [¶] . . . My officiating at Ms. O'Neill's wedding will have no impact on my handling of this case. [¶] . . . I take no offense to this challenge. I believe that I have been and can continue to be impartial to all parties and counsel."

4

The matter was assigned to Judge Barton for the limited purpose of ruling on the disqualification motion. (See Code Civ. Proc., § 170.3, subd. (c).) After reviewing the statement of disqualification and Commissioner Ratekin's verified answer, the court denied the motion. The court found Kenneth did not meet his burden to show "a close personal relationship" between O'Neill and Commissioner Ratekin that would "raise doubts regarding Commissioner Ratekin's ability to remain impartial." The court also noted that the performance of a marriage ceremony is a ministerial act, and not a judicial act requiring the exercise of judicial discretion, citing *People ex rel. McDonald v. Bush* (1870) 40 Cal. 344.

One week later, Kenneth petitioned for a writ of mandate in this court, contending disqualification was required because of the appearance of partiality under section 170.1(a)(6)(A)(iii). Although Kenneth's challenge in the trial court focused on the purported personal relationship between the commissioner and Kimberly's counsel, in his writ petition he argued primarily that the mere act of officiating at a wedding compels disqualification.

In her response, O'Neill (on behalf of her client) argued disqualification was not required because there is "no close personal relationship existing between the Commissioner and me." She asserted: "Because Commissioner Ratekin is only appearing at the ceremony, and leaving immediately thereafter, I will not have a chance to speak with her at the ceremony and the expectation is only that she will be supervising the recitation of the vows, exchange of wedding rings and signing the marriage license." O'Neill also submitted a lengthy supporting declaration. However, O'Neill did not

5

present this declaration in the proceedings below, and Judge Barton did not consider the asserted facts when ruling on the motion. Thus, we cannot consider the declaration in ruling on this writ petition, and we cannot consider facts discussed in Kimberly's opposition that are asserted for the first time in this court.

In reply, Kenneth expanded on his argument that a judge's participation at a wedding created a concern that the judge could not rule fairly and impartially, and noted that many wedding officiants have meaningful personal involvement, such as meeting with the couple to determine their wishes and desires about the ceremony, attending a rehearsal and a rehearsal dinner, and receiving a gift or stipend. Kenneth argued that "an objective observer could reasonably conclude that a Commissioner who agreed to officiate at a litigant's attorney's wedding could be reluctant to rule against that litigant and attorney, especially in light of the various motions for attorney fees [and sanctions] that are at issue."

Viewing the issue as raising close ethical questions that are likely to recur, we issued an order to show cause. Pursuant to the parties' agreement, we treated the parties' prior written submissions as the formal briefing on the order to show cause.[1]

---

[1] After we issued the order to show cause, Kimberly informed us she has substituted new counsel in place of O'Neill in the family court proceedings. She thus argues the matter is moot and requests dismissal. We deny the dismissal request. Even assuming the attorney substitution means the disqualification issue is moot, we exercise our discretion to consider the issue under the public interest exception. Under this exception, a court may resolve a moot issue that has continuing public interest and is likely to recur. (See *Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485.)

6

DISCUSSION

I. *Governing Legal Standards*

A determination on a challenge for cause under section 170.1(a)(6)(A)(iii) "touches upon the core of the judicial process" requiring "the appearance of objectivity of the decision maker. . . ." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 100 (*United Farm Workers*).) A party moving for disqualification need not show actual bias because the Legislature sought to guarantee not only fairness to individual litigants, but also "to ensure public confidence in the judiciary" (*People v. Freeman* (2010) 47 Cal.4th 993, 1001), which " ' "may be irreparably harmed if a case is allowed to proceed before a judge who *appears* to be tainted." ' " (*In re Kensington International, Ltd.* (3d Cir. 2004) 368 F.3d 289, 302, italics added [interpreting the analogous federal statute].) A party has the right to an objective decision maker and to a decision maker who appears to be fair and impartial.

Section 170.1(a)(6)(A)(iii) states that a judge is disqualified if "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." " 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' . . ." (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 389 (*Haworth*).) The applicable disqualification standard is an objective one: if a fully informed, reasonable member of the public would fairly entertain doubts that the judge is impartial, the judge should be disqualified. (*Ibid.*; *Flier v. Superior Court* (1994) 23 Cal.App.4th 165, 170.)

7

" 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." ' [Citations.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' " (*Haworth, supra*, 50 Cal.4th at p. 389; *United Farm Workers, supra*, 170 Cal.App.3d at p. 106, fn. 6.) Moreover, the reasonable person must be viewed from the perspective of the reasonable layperson, "someone outside the judicial system," because "judicial insiders, 'accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would.' " (*In re Kensington International Ltd., supra*, 368 F.3d at p. 303; accord *Leland Stanford Junior University v. Superior Court* (1985) 173 Cal.App.3d 403, 408 [employing the " 'average person on the street' " standard]; *United Farm Workers, supra*, 170 Cal.App.3d at p. 104 [same].)

The California Supreme Court has cautioned that a party raising the issue has a heavy burden and must " 'clearly' " establish the appearance of bias. (*Haworth, supra*, 50 Cal.4th at p. 389; see *Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1311.) "[T]he appearance-of-partiality 'standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." ' " (*Haworth, supra*, 50 Cal.4th at p. 389.) "A judge . . . 'has a duty to decide any proceeding in which he or she is not disqualified.' [Citation.] ' "Judicial responsibility does not

8

require shrinking every time an advocate asserts the objective and fair judge *appears* to be biased. The duty of a judge to sit where not disqualified is equally as strong as the duty not to sit when disqualified." ' " (*Id.* at p. 392.)

The weight of authority supports that where, as here, the relevant facts are undisputed, a de novo review standard applies to a section 170.1(a)(6)(A)(iii) challenge to a claimed appearance of partiality. (See *Briggs v. Superior Court* (2001) 87 Cal.App.4th 312, 319; *Sincavage v. Superior Court* (1996) 42 Cal.App.4th 224, 230; *Flier v. Superior Court, supra*, 23 Cal.App.4th at p. 171; see also *Haworth, supra*, 50 Cal.4th at pp. 382-388 & 383, fn. 8 [holding independent review standard applies in the arbitrator appearance-of-bias context, and noting the issue has been the subject of conflicting opinions in the judicial context].)

## II. *Analysis*

We agree with Kimberly there is no indication that Commissioner Ratekin's agreement to officiate at Kimberly's counsel's wedding shows bias or that she could not be impartial in all her future rulings. However, as Kenneth correctly argues, the existence of bias is not the standard here. The standard is whether a reasonable person aware of the facts would entertain doubts as to whether the commissioner could be impartial in this case. Would an objective layperson *aware of all relevant facts* reasonably conclude that Commissioner Ratekin could not be impartial and would tend to favor a litigant because the commissioner officiated at the litigant's counsel's wedding?

In answering this question, we do not write on a clean slate. In *People v. Carter, supra*, 36 Cal.4th 1215 (*Carter*), the California Supreme Court rejected the defendant's

9

claims that a trial judge's act of officiating at the prosecutor's daughter's wedding several months before the commencement of a death penalty trial created an appearance of partiality under section 170.1(a)(6)(A)(iii).

In *Carter,* the defendant moved to disqualify the trial judge (Superior Court Judge Melinda Lasater) based on the defendant's assertions of close personal ties between the prosecutor and Judge Lasater. (*Carter, supra*, 36 Cal.4th at pp. 1240-1241.) These connections included that Judge Lasater and the prosecutor had previously worked together in the district attorney's office; the judge's family had gone camping with the prosecutor's family in addition to other families; the judge's husband had purchased the prosecutor's son's dirt bike approximately 10 years earlier; the prosecutor's daughter had " 'house sat' " for the judge one year earlier and been paid a minimal amount; and the judge and the prosecutor had sporadic social contacts at parties. (*Id.* at p. 1241.) Additionally, several months before the death penalty trial was scheduled to begin, Judge Lasater officiated at the wedding of the prosecutor's daughter at his daughter's request. (*Ibid.*) As part of this activity, the judge had gone to lunch with the prosecutor's daughter and wife, and the daughter gave the judge a necklace similar to necklaces given to the bridesmaids. (*Id.* at p. 1241 & fn. 18; see *Carter v. Chappell* (S.D.Cal. Mar. 18, 2013) 2013 WL 1120657, *165 [district court's denial of Carter's habeas relief petition].) Regarding the wedding, Judge Lasater stated in a declaration: " 'It is common practice for judges of this Court to perform wedding ceremonies for members of the legal community and their families. My agreement to perform the wedding ceremony for [the prosecutor's] daughter was such an arrangement and was done at his daughter's request,

10

rather than [the prosecutor's]. I was not paid to perform the ceremony and specifically indicated that no fee should be paid.' " (*Carter*, at pp. 1241-1242, fn. 18.) Judge Lasater denied that she had any biases, and stated her relationship with the prosecutor was primarily a professional relationship and not a " 'close personal friendship.' " (*Ibid.*)

Another superior court judge conducted a hearing on the defendant's disqualification motion, and denied the motion. (*Carter, supra*, 36 Cal.4th at p. 1242.) The court found a reasonable person aware of the facts regarding the prior relationship between the prosecutor and Judge Lasater "would not reasonably entertain a doubt that Judge Lasater will be able to be impartial in the case." (*Ibid*.)

After Carter was convicted and sentenced to death, he challenged the court's ruling for the first time. (*Carter, supra*, 36 Cal.4th at p. 1242.) The California Supreme Court held the defendant waived the disqualification issue by failing to file a timely writ petition (Code Civ. Proc., § 170.3, subd. (d)), but alternatively addressed the issue on its merits and found no grounds for disqualification. (*Carter, supra*, at p. 1243.) The court stated: "Even if we were to overlook the procedural deficiency inherent in defendant's challenge to the denial of his disqualification motion, we would find no merit in the assertion . . . that Judge Lasater had a responsibility to recuse herself in view of her prior professional and casual social relationship with [the prosecutor]. Defendant provides no statutory or case law authority in support of that position, and we are aware of none. Because virtually all judges are drawn from the ranks of the legal profession, such prior relationships are neither unusual nor dispositive. (See *United Farm Workers of America v. Superior Court, supra*, 170 Cal.App.3d 97, 100 ['[T]he proper performance of judicial

11

duties does not require a judge to withdraw from society and live an ascetic, antiseptic and socially sterile life. . . .'].) [¶] In our view, [the court] correctly determined . . . a reasonable person would not entertain a doubt as to Judge Lasater's impartiality. [Citations.]"[2] (*Ibid.*)

The *Carter* court found the judge's act of officiating at the wedding of the prosecutor's daughter, along with intermittent social and professional contacts, was insufficient to show an appearance of bias. The circumstances here show an even more attenuated connection between the judicial officer and the attorney. The undisputed evidence shows, and Judge Barton found, that O'Neill and Commissioner Ratekin had no preexisting social or personal relationship and that Commissioner Ratekin's participation in the wedding was purely an official function. Unlike in *Carter*, there was no evidence Commissioner Ratekin would receive any gift or other benefit for presiding over the wedding and she had no ties with anyone in the attorney's family. Commissioner Ratekin had no plans to stay at the reception and her prior contacts with O'Neill were solely in a professional context. Although Commissioner Ratekin agreed to perform the wedding ceremony while O'Neill had a matter pending before the court, a similar circumstance

---

[2]    Because the *Carter* court initially found the defendant waived the disqualification challenge, the court's discussion of this issue could be characterized as dicta. But, even if it is, dicta from the California Supreme Court is highly persuasive and should generally be followed. (See *People v. Rios* (2013) 222 Cal.App.4th 542, 563; *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1147.) *Carter* appears to be the only reported California judicial decision considering the issue of ethical conflicts arising from judge-performed weddings. (*Carter, supra*, 36 Cal.4th at pp. 1240-1244.) *Carter* was not cited by either party, but was discovered during our independent legal research.

existed in the *Carter* case where the prosecutor's daughter's wedding occurred within several months before the death penalty trial began.

*Carter* involved the wedding of an attorney's daughter rather than of the attorney. But the logic of *Carter*'s conclusion applies equally here. By asking a judge to officiate over his or her wedding, the attorney does not necessarily have a personal relationship with the judge, nor is the attorney in a special position to influence the judge or to provide a benefit to the judge. Absent additional facts, the act of officiating is purely a governmental function. A marriage must be solemnized to be valid, and the Legislature has designated certain individuals who are qualified to perform this function, including religious figures, current and retired judicial officers, and legislators. (Fam. Code, § 400.) A judicial officer's officiating role thus derives from his or her governmental position and does not necessarily reflect a personal or social relationship. Many judges perform weddings in a purely professional capacity and have little or no contact with the couple other than the judge's appearance at the ceremony to provide the necessary legal solemnization. Although weddings have great levels of personal significance for couples and their families and friends, there is nothing inherent in a judge's agreement to officiate at the event that would lead a reasonable person to believe the judge will not limit his or her involvement to a professional role.

These observations are consistent with the public policy of encouraging judges to provide this public service for couples who prefer a secular wedding ceremony. A holding that the agreement to officiate at an attorney's wedding automatically disqualifies a judge from presiding over a matter in which the attorney appears would preclude judges

13

from performing this public service and/or would require assignment to a new judicial officer, thus unnecessarily interrupting and delaying case resolution.

Kenneth argues that even if there was no social or personal relationship between the commissioner and O'Neill, an appearance of impropriety existed because "an average, reasonable person might fairly entertain that such a relationship could exist . . . (regardless of whether it does or does not in fact exist)." However, Kenneth ignores that the standard requires that we assume the reasonable person is aware of all the relevant facts and circumstances, and in this case, those relevant facts show the absence of a personal or social relationship.

Kenneth also argues: "[I]t is a matter of common sense that, if the average reasonable person was given the choice of having his or her case heard by a judge who has no connection with the attorneys or having the case heard by a judge who is going to officiate one of the attorney's wedding in the very near future, that average, reasonable person would feel much more confidence in the first judge." However, again Kenneth misconstrues the standard. We do not view the issue through the eyes of a litigant who is emotionally invested in the litigation. Nor is a court permitted to give any deference to the litigant's preferred judicial officer. Unless a judge is required to be disqualified, the judge has a duty to hear a case to which he or she has been assigned. The fact that a litigant may prefer a judge who had no contacts with either attorney is not the relevant point here. A party's "necessarily partisan views [do] not provide the applicable frame of reference. [Citations.] Rather, 'a judge faced with a potential ground for disqualification

[should] consider how [the] participation in a given case looks to the average person on the street.' " (*United Farm Workers, supra*, 170 Cal.App.3d at p. 104.)

An "average person on the street" aware of the fact that Commissioner Ratekin intended to perform the ceremony in a purely official capacity would not reasonably entertain a doubt that she would continue to be impartial. (See New York State Advisory Com. on Judicial Ethics, Opn. 12-104 (June 14, 2012) ["a judge who is authorized by law to solemnize a marriage is not precluded from doing so simply because a member of the couple is an attorney who regularly appears before the judge"].)

We emphasize that our conclusion does not mean officiating over a wedding is an irrelevant factor in the appearance-of-partiality analysis. As Kenneth noted in his initial motion, many attorneys select a judge to preside over a wedding because the judge has a close personal relationship with the individual or with the family. Or in the course of wedding planning, personal ties can be created, reflected by the judicial officer participating in prewedding planning events, attending the wedding reception or other related social functions, or accepting monetary or other gifts in exchange for performing the wedding.[3] In these circumstances, the agreement to officiate at the wedding *together with* the social connection and/or the receipt of benefits would create a doubt in the mind of a reasonable person as to whether the judge could and would remain impartial and thus

---

[3]     Judges are not prohibited from receiving a gratuity for performing a marriage if the service is provided on a Saturday, Sunday or legal holiday. (See Pen. Code, § 94.5; Cal. Judges Assn., Ethics Opn. No. 5. (1990); Rothman, Cal. Judicial Conduct Handbook (3d ed. 2007), appen. D.)

would require disqualification. (See, e.g., *Catsimatidas v. Innovative Travel Group, Inc.* (S.D.N.Y. 1988) 1988 WL 3420.)

Before a judicial officer agrees to officiate at an attorney's wedding, the officer must carefully evaluate all factors that may potentially impact disqualification. These factors include the extent of the judge's involvement in the ceremony and in other related events; the nature of the parties' past and current social/personal relationship; any ties or connections with the families of the wedding party; and the nature of the issues pending or likely to come before the court. (See generally *United Farm Workers, supra*, 170 Cal.App.3d at pp. 104-105.) Because the act of officiating may raise reasonable questions about the relationship, this fact is a matter that must be disclosed for a reasonable time. (Cal. Code Jud. Ethics, canon 3E(2)(a); see Cal. Judges Assn., Jud. Ethics Com., Judicial Ethics Update (November 2012) p. 3 ["A judge, who has no social relationship with an attorney other than performing the attorney's wedding, is required to disclose that he/she performed the wedding in any cases in which the attorney appears for a period of at least two years"].)[4] Not only is this required by the California Code of Judicial Ethics, but from a practical standpoint the disclosure allows the attorneys a full opportunity to raise factors that may influence the court's assessment of whether disqualification is required under section 170.1(a)(6)(A)(iii). In this case, Kenneth

---

[4]    The California Judicial Ethics Updates are prepared by the Ethics Committee of the California Judges Association and are advisory only. The cited update can be found at http://www.caljudges.org/files/pdf/November_2012.pdf [as of February 28, 2014].

16

admits he did discover the matter before the commissioner ruled on any motions, and he does not raise any issues regarding the extent or timeliness of the disclosure.

## DISPOSITION

Petition denied.  The parties to bear their own costs.

HALLER, J.

WE CONCUR:


NARES, Acting P. J.


McDONALD, J.

17