Filed 5/11/21  P. v. Garcia CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047402 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 215526) |
| v. | |
| VICTOR GARCIA, | |
| Defendant and Appellant. | |

Appellant Victor Garcia appeals a trial court order in which the court found Garcia had violated his postrelease community supervision (PRCS) and required him to serve 180 days in the county jail.  For the reasons explained below, we affirm the order.

## I.  FACTS AND PROCEDURAL BACKGROUND

A.  *Procedural Background*

On January 14, 2016, Garcia pleaded no contest to one count of false imprisonment (Pen. Code, §§ 236, 237[1]).  He admitted one prior strike.  On May 13, 2016, the trial court sentenced him to 32 months in prison with credit for time served, placed him on PRCS, and ordered him to report to the "Department of Parole" in San Jose.

---

[1] Unspecified statutory references are to the Penal Code.

On June 29, 2016, the probation department, which was the entity supervising Garcia on PRCS, filed a petition for revocation (§§ 3455, 1230.2) in which it alleged that Garcia had failed to report as ordered by the trial court and requested that the trial court revoke his PRCS.

At a hearing on October 24, 2016, Garcia admitted on the record that he had violated his PRCS. The trial court sentenced him to 13 days in jail for the violation, gave him credit for time served, and reinstated and modified his PRCS. The trial court ordered Garcia to report back to his supervising officer within two days, and Garcia told the court that he understood the order.

On November 30, 2016, the probation department filed a second petition for revocation, alleging that Garcia had violated several terms and conditions of his PRCS, including by failing to report and maintain contact with the probation department. The probation department recommended that Garcia's PRCS be revoked and a bench warrant be issued. On December 5, 2016, the trial court found the allegations supported by probable cause. Garcia did not appear for a hearing on the alleged PRCS violations until 2019.

In July 2019, Garcia was arraigned on the alleged violations. At a subsequent hearing on July 30, 2019, Garcia denied he had violated his PRCS in 2016.

On August 12, 2019, Garcia appeared with his appointed attorney for a formal violation hearing (§ 1203.2, subd. (b)(1)). Shortly after the matter was called by the trial court, Garcia asked the trial court to appoint another attorney to represent him, and the trial court held a *Marsden* hearing on Garcia's request.[2] After hearing from Garcia and his counsel, the trial court denied Garcia's *Marsden* motion. Following the conclusion of the *Marsden* hearing, the trial court proceeded with the formal violation hearing.

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

2

*B. Evidence Presented at the August 12, 2019 Violation Hearing*

       1. <u>Prosecution Evidence</u>

Valdemar da Rocha, a probation officer with the Santa Clara County Probation Department, testified. Officer da Rocha stated that Garcia was transferred to his supervision in late October 2016. After receiving the transfer, da Rocha had reviewed the prior probation officer's entries or notes and learned that Garcia had previously violated his PRCS for failing to report. Officer da Rocha also learned that Garcia's next appointment with a probation officer was scheduled for November 9, 2016. On November 9, 2016, Garcia did not report in person to da Rocha. Officer da Rocha stated that Garcia had left "several messages" to a "previous PO and second probation officer's voicemail indicating he wasn't going to be able to make it on the 9th and he eventually left one on my voicemail." Garcia indicated in his message to da Rocha, as well as to the other probation officer, that he could not make the appointment because of a "medical emergency." Garcia did not provide da Rocha with any contact information. Although Garcia had stated he "was in the hospital," he did not leave any information about the hospital.

On November 14, 2016, Garcia called Officer da Rocha, and they spoke on the phone. This conversation was the only time that Garcia and da Rocha ever spoke. Garcia gave da Rocha the name of the hospital and room number, and da Rocha told Garcia he would meet him at the hospital. Officer da Rocha testified that in their conversation Garcia did not express confusion about why he had to call da Rocha. Officer da Rocha informed Garcia that "it was his responsibility to maintain contact with me and to notify me of any changes in his contact information." Garcia did not challenge da Rocha's statement.

On November 15, 2016, before they could meet at the hospital, Garcia called Officer da Rocha and left him a voicemail to tell him he had been discharged. Garcia left another voicemail message on November 18, 2016, "indicating that he was going to try to

3

contact [da Rocha] at a later time to set up an appointment." However, da Rocha never heard from Garcia. Officer da Rocha filed a petition for revocation. Following the filing of the petition, Garcia did not contact either da Rocha or anyone else at the probation department.

During Officer da Rocha's testimony, the prosecution marked for identification the petition for revocation filed on November 30, 2016, which the prosecution described as including an attachment labeled " 'Special Conditions of Post-Release Community Supervision.' " The prosecution requested that the trial court admit three pages titled " 'Special Conditions of Post-Release Supervision' " (hereafter Exhibit 1 or PRCS conditions). After defense counsel confirmed he had no objection to admission of the exhibit, the trial court admitted Exhibit 1 into evidence.[3]

## 2. Defense Evidence

Garcia testified in his own defense. Garcia acknowledged that he had previously been in court for a PRCS violation, but he was not sure of the date. When questioned

---

[3] The record on appeal does not include a copy of this document, but there is no dispute Garcia signed it. Although the trial court prepared a settled statement about the exhibit admitted into evidence at the hearing in response to an order from this court, the settled statement does not include a document matching the description of Exhibit 1.

According to the settled statement, "[d]uring the hearing [on August 12, 2019], an Exhibit was marked as #1 and *the first three pages of it were admitted into evidence*" and "[a]t the conclusion of the hearing the Exhibit was returned to the party that produced it and the court did not keep a copy" (italics added). The settled record attaches three pages that consist of the petition for revocation filed on November 30, 2016, by Officer da Rocha (petition) and two attachments to the petition on Judicial Council Form MC-025.

By contrast, the reporter's transcript for the August 12, 2019 hearing does not reflect that the first three pages of the marked exhibit were admitted into evidence. Rather, the prosecution requested the trial court mark a copy of the petition which was "many pages thick" and stated "[i]n the middle of it there is a document called 'Special Conditions of Post-Release Community Supervision' " that had "a signature of Victor Garcia and a probation officer explaining the terms and conditions of PRCS." It was that three-page document—not that first three pages of the petition— that was then admitted into evidence. While we note this anomaly between the reporter's transcript and the settled statement, it has no material impact on our analysis here.

4

whether he remembered the outcome of that hearing, Garcia stated that "I remember having a conversation with you concerning all of that. Whether I got a full understanding of it, I probably didn't." He remembered being released from court. He believed, however, that after he was released from court, he reported to the probation department on October 26, 2016, and he met with a "female" and he tried to "explain to her that I didn't believe I was on probation." He acknowledged he was "given papers" and he "did sign some" but that he did not believe he understood them. Garcia was shown Exhibit 1 (the PRCS conditions) and testified that he had just "signed it" but "didn't read any of it." Garcia did not remember an appointment being set with probation for November 9, 2016, but he did recall making a phone call when he was "in the hospital." Garcia maintained that he "wasn't trying to elude anybody" and had been in and out of the hospital and was homeless.

Regarding when he spoke to Officer da Rocha, Garcia stated, "I told him that I – that it looked like I was going to be released the next day, I would try to get ahold of him if I could – I didn't have a cell phone – and that was it. That was basically it. I left that message on his recorder."

Garcia stated that towards the end of 2016 or maybe the early part of 2017 he had a conversation with probation, spoke to a woman, and "once again I tried to explain to them why was I on probation, and she told me that [] – I had to be or whatever the case may be. I'm not exactly sure word for word." When questioned further on direct examination about what the woman in the probation office told him, Garcia testified that "[w]e had an extensive conversation, but what it was all about, I really don't, you know – I can't recall." Garcia stated it "was all confusing" and he "still believed I was not on probation and I shouldn't have been on probation." He acknowledged on direct examination that he "never had any contact with [the probation department] after that."

5

C. *Trial Court's Ruling*

After the close of testimony and further argument by counsel, the trial court ruled that Garcia had violated the conditions of his PRCS. The trial court stated: "All right. And I often give people a break usually if they admit early and, Mr. Garcia, you seem like a nice guy and I would like to give you break, but in all fairness to everybody else, I don't think I should because, No. 1, you were gone for, as you say, three and a half years, and the people that are gone for much less than that I give them 180 days. And also I do not believe that you did not know you were on supervision. [¶] The reason I don't believe it is that several people have told you – your attorneys, the judges that sentenced you, the judge that took the violation of probation, the probation officer himself and herself that spoke to you, of all – I mean, you don't call them without reason and basically you never told them, 'Stop bothering me. I'm not on supervision.' You never told them that because they didn't say that. And finally, it's not the first time you've been in trouble in this case. You've been in since – you've been a youthful offender. You've been in and out of prison."

Following this statement by the trial court, Garcia noted that "I've only been to prison one time, your Honor." Neither Garcia or his defense counsel made any other objection or response to the trial court's asserted reasons for not believing Garcia's testimony that he was not on supervision.

The trial court reinstated Garcia's PRCS under its original terms and conditions, ordered Garcia to serve 180 days in the county jail for the violation, and awarded 53 days of custody credits.

Garcia timely appealed the trial court's order (§ 1237, subd. (b)).

## II. DISCUSSION

On appeal, Garcia asserts (1) his defense counsel performed ineffectively by failing to object to the admission of Exhibit 1; (2) his defense counsel performed ineffectively by failing to object to comments made by the trial court reflecting its bias

6

against Garcia; and (3) the trial court erred in relying on statements by Garcia's attorneys and other judicial officers in deciding that it did not believe that Garcia did not know he was on supervision or, alternatively, his defense counsel performed ineffectively by failing to object to the trial court's reliance on those statements.  We address each contention in turn.

A. *Ineffective Assistance of Counsel Claim Related to Admission of Exhibit 1*

Garcia claims that his defense counsel was ineffective for failing to object to Exhibit 1 (the PRCS conditions) as hearsay.  Garcia points out that Officer da Rocha "did not describe the file which contained the document nor did da Rocha describe the provenance of the document" and Garcia argues there was "no tactical or strategic reason" for defense counsel to not object to the admission of Exhibit 1.  Garcia argues that the prosecution failed to establish that the document fell within the business records exception to the hearsay rule.  (Evid. Code, § 1271.)

1. Legal Principles

A criminal defendant's right to effective assistance of counsel is guaranteed under the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution.  (*Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*); *People v. Rices* (2017) 4 Cal.5th 49, 65.)  Whether on direct appeal or in collateral proceedings, a defendant "claim[ing] that counsel's assistance was so defective as to require reversal of a conviction" bears the burden of proving that counsel's deficient performance resulted in prejudice.  (*Strickland*, at p. 687.)

To satisfy *Strickland*'s two-part test, a "defendant must show that counsel's representation fell below an objective standard of reasonableness" (*Strickland*, *supra*, 466 U.S. at p. 688), and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Id.* at p. 694.)  "It is particularly difficult to prevail on an appellate claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record

affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009, italics omitted.)

Regarding a counsel's failure to object to evidence, our higher court has observed that "[t]he decision whether to object to evidence at trial is a matter of tactics and, because of the deference accorded such decisions on appeal, will seldom establish that counsel was incompetent." (*People v. Lucas* (1995) 12 Cal.4th 415, 444 [concluding defendant failed to show counsel were incompetent for omitting to move to suppress evidence on the chain of custody grounds]; see also *People v. Hillhouse* (2002) 27 Cal.4th 469, 502 ["[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance."].)

2.  Analysis

We decide that Garcia has not demonstrated his counsel's representation fell below an objective standard of reasonableness because the record does not establish that that decision is not one for which there could be no satisfactory tactical explanation.  It is reasonably possible that Exhibit 1 could have been admitted as an official record pursuant to Evidence Code section 1280.  The object of the official records exception to the hearsay rule " 'is to eliminate the calling of each witness involved in the preparation of the record and substitute the record of the transaction instead.  [Citations.]  Accordingly, for the exception to apply, it is not necessary that the person making the entry have personal knowledge of the transaction.  [Citations.]  Assuming satisfaction of the exception's other requirements, the trustworthiness requirement . . . is established by a showing that the written report is based upon the observations of public employees who had a duty to observe the facts and report and record them correctly.' " (*McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 695, italics omitted; see also

*Coe v. City of San Diego* (2016) 3 Cal.App.5th 772, 786–788 [police reports are admissible under the official records exception].)

The record does not contain any suggestion that the official records exception would not apply. We decide that Garcia has not established deficient performance by his counsel for failing to object to a document for which there is no reason to doubt a proper foundation could have been laid and which is otherwise routinely admissible.

In any case, Garcia cannot establish prejudice because it is not reasonably probable that a result more favorable to Garcia would have been reached in the absence of the admission of Exhibit 1.  The burden of proof in a PRCS violation hearing is by preponderance of the evidence.  (See *People v. Rodriguez* (1990) 51 Cal.3d 437, 447 (*Rodriguez*).)  Substantial evidence, apart from Exhibit 1, supports the trial court's decision that Garcia had violated his PRCS and that his testimony that he did not know he was on supervision was not credible.

Garcia had already admitted violating the terms of his PRCS in October 2016 by failing to report to probation.  Thereafter, according to Officer da Rocha's testimony, Garcia had met with a probation officer on October 26, 2016, and was given a new date to meet with probation.  Officer da Rocha spoke with Garcia by phone on November 14, 2016, and Garcia never expressed any confusion about or questioned why he had to call da Rocha.  Officer da Rocha testified he told Garcia that it was Garcia's responsibility to stay in contact with him.  In his own testimony, Garcia indicated he believed he had reported to the probation department and had a conversation with a woman there about probation.  Although Garcia could not recount "word for word" the conversation, he testified that she had told him, when Garcia "tried to explain to them why was I on probation," that "I had to be or whatever the case may be."

In light of this evidence, it is not reasonably probable that the trial court would have reached the conclusion that Garcia did not know he was on supervision and was required to report to probation, even in the absence of the admission of Exhibit 1.  We

9

therefore reject Garcia's claim that his defense counsel performed ineffectively by failing to object to its admission.

B. *Ineffective Assistance of Counsel and Judicial Bias*

Garcia contends that "[b]efore the hearing began, the court made several statements indicating that it had already decided that appellant was not credible." Garcia states that "[t]hese statements began almost immediately after the case was called and continued during a subsequent *Marsden* motion." Garcia claims that the trial court's comments appear to evidence a biased attitude that violated his right to due process. Garcia asserts his counsel performed ineffectively by failing to object to the trial court "prejudging appellant and his defense" and by failing to request that the "matter be transferred to another department for hearing on the alleged violation."

" 'A fair trial in a fair tribunal is a basic requirement of due process.' " (*People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*).) The constitutional right to due process focuses on "those circumstances where, even if actual bias is not demonstrated, the probability of bias on the part of a judge is so great as to become ' "constitutionally intolerable." ' [Citation.] The standard is an objective one." (*Freeman*, at p. 1001.) "[A] judge's 'rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' " (*People v. Armstrong* (2019) 6 Cal.5th 735, 798.) Moreover, "the due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found." (*Freeman*, at p. 1005.)

Judicial bias is also addressed in California's statutory disqualification scheme which, "is not solely concerned with the rights of the parties before the court but is also 'intended to ensure public confidence in the judiciary.' [Citation.] Thus, an explicit ground for judicial disqualification in California's statutory scheme is a public perception of partiality, that is, the appearance of bias." (*Freeman*, *supra*, 47 Cal.4th at pp. 1000–1001, fn. & italics omitted.)

10

We have carefully reviewed the transcripts from the *Marsden* and formal violation hearings. We disagree with Garcia's characterization of the transcripts as showing that the court at the outset of the violation hearing had found Garcia's defense unreasonable. While the trial court expressed skepticism when the matter was first called that Garcia did now know he was on supervision, the trial court allowed that Garcia might be able to present an explanation. The trial court's other statements were made in the context of the *Marsden* hearing and reflected skepticism about Garcia's statement in support of his request for new appointed counsel on the basis that counsel never advised him that he was on supervision. Read in context, we disagree with Garcia that the trial court indicated that it had prejudged Garcia with respect to the outcome of the violation hearing. Instead, the trial court stated that it would hear from the witnesses before making a decision on the revocation request.

Garcia's argument that the trial judge "prejudged" the outcome of the case is based primarily on *People v. Barquera* (1957) 154 Cal.App.2d 513. In *Barquera*, the appellate court reviewed statements by a trial judge in a suppression hearing where the judge stated several times to defense counsel that it would be a waste of time to present any evidence and that included the statement that " 'You have got admissions here by the defendant. I am not going to take his word against the police officer. I certainly wouldn't believe that last character that was on the stand [referring to the defendant]. I don't care what he testified to. I don't think you have got any defense, Counsel.' " (*Id.* at pp. 515–517 & fn. 1.) In reversing this conviction, the court held that the trial judge's reliance on testimony from the search and seizure hearing to decide guilt or innocence was improper and that the trial judge violated due process by "form[ing] an opinion of appellant's guilt prior to the time appellant presented his defense." (*Id.* at p. 515, fn. omitted.)

By contrast, the trial court's statements here were not unequivocal assertions that Garcia was untruthful, not credible, or that his defense was meritless. The trial court did

11

not indicate it would be a waste of time for Garcia to present evidence at the formal violation hearing. Following the *Marsden* hearing, Garcia testified about his version of events. The trial court did not disparage, improperly interject, or make any pronouncement about Garcia's testimony other than deciding that, at the conclusion of the formal violation hearing, that it did not believe that Garcia did not know he was on supervision.

Moreover, addressing specifically the comments made by the trial court at the *Marsden* hearing expressing skepticism, the trial judge here could not have ruled on Garcia's *Marsden* motion without evaluating the evidence before it, which included statements by Garcia and his attorney. "When a defendant seeks to discharge appointed counsel and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his or her contention and to relate specific instances of the attorney's inadequate performance." (*People v. Winn* (2020) 44 Cal.App.5th 859, 870.) " 'Depending on the nature of the grievances related by defendant, it may be necessary for the court also to question his [or her] attorney.' " (*Ibid.*)

Garcia directly put in issue at the *Marsden* hearing that he had never been advised by his prior attorney for his original sentence and his current attorney (who also represented him at his first violation hearing) that he was on supervision. The trial court properly evaluated the assertions raised by Garcia himself in the context of Garcia's *Marsden* motion. We disagree with Garcia that the trial court made any statements reflecting a general bias against him.

We note that Garcia's briefing appears to concede that there is no actual bias or constitutionally intolerable level of bias by the trial court contained in the record before us. In his reply brief, Garcia argues primarily that the federal standard does not apply and that, under California law relating to the disqualification of a judge, we must conclude that under the circumstances here the trial court appeared to be biased, and that reversal is

required "per se."[4]  We do not agree.  Based on our careful review of the record, including the reporter's transcripts from the August 12, 2019 hearing and the *Marsden* hearing on that same date, the record does not support Garcia's attacks on the trial court's fairness and impartiality.  For example, while the trial court expressed frustration at the outset of the hearing at Garcia for having been gone for over two years we do not view this expression of frustration as creating an impermissible appearance of bias to the reasonable person.

In sum, on this record and taking the trial court's comments in context, we can not conclude that Garcia has established an ineffective assistance claim on the basis of his counsel failing to object to the alleged bias of the trial court.

C. *Trial Court's Reliance on Information Not Presented at the Violation Hearing*

Garcia asserts that the trial court, in deciding Garcia had violated his PCRS, improperly relied on prior statements made by Garcia's attorneys and prior judges that were not in evidence at the formal violation hearing.  He further argues that his defense counsel's failure to object "when the court used extraneous and inadmissible evidence that had not been presented at the hearing" did "not waive the issue because the trial court's overall comments demonstrate that any objection would have been futile." Alternatively, he claims his defense counsel performed ineffectively by failing to object to the trial court's consideration of those statements.

Garcia points to the pronouncement made by the trial court after the close of testimony where the trial court stated it did not believe Garcia that he did know he was on

---

[4] Specifically, Garcia cites to Code of Civil Procedure section 170.1.  "[Code of Civil Procedure] [s]ection 170.1(a)(6)(A)(iii) states that a judge is disqualified if '[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.'  ' "Impartiality" entails the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind." ' " (*Wechsler v. Superior Court* (2014) 224 Cal.App.4th 384, 390–391.)  "The California Supreme Court has cautioned that a party raising the issue has a heavy burden and must ' "clearly" ' establish the appearance of bias." (*Id.* at p. 391.)

supervision.  Specifically, the trial court stated, "[t]he reason I don't believe it is that several people have told you – your attorneys, the judges that sentenced you, the judge that took the violation of probation, the probation officer himself and herself that spoke to you, of all – I mean, you don't call them without reason and basically you never told them, 'Stop bothering me.  I'm not on supervision.'  You never told them that because they didn't say that."

### 1.  Forfeiture

Turning first to whether Garcia has preserved his claim for appellate review, Garcia acknowledges forfeiture applies because of his lack of contemporaneous objection to the alleged judicial misconduct he now challenges.  (See *People v. Sturm* (2006) 37 Cal.4th 1218, 1237 (*Sturm*).)  Garcia nevertheless argues his lack of objection should be excused because an objection would have been futile given the "record demonstrates a pervasive judicial bias by the trial court."  We agree that Garcia's failure to object to the statements in the trial court forfeited this claim for appellate review, and we disagree with Garcia's contention that any exception to forfeiture applies.

For the reasons we have previously explained, we reject his characterization of the record as showing an appearance of bias by the trial court, let alone pervasive bias.  (Cf. *Sturm*, *supra*, 37 Cal.4th at p. 1230 [concluding a trial judge's comments in front of the jury were "sufficiently severe and pervasive"]; *id*. at p. 1233 [and reversing death sentence, where trial judge "belittled defense witnesses on several occasions," "disparaged defense counsel,"]; *id*. at p. 1235 [and "interposed his own objections to questions asked by defense counsel" on numerous occasions].)  Accordingly, Garcia has not carried his burden of showing that his forfeiture should be excused based on futility.

### 2.  Ineffective Assistance of Counsel

Alternatively, Garcia argues that if this court deems his claim to have been forfeited, then defense counsel was constitutionally ineffective for failing to object to the trial court's consideration of "inadmissible evidence."  Garcia contends that "[i]t was

14

incumbent upon defense counsel to object when the court revealed that it had both considered evidence not in the record (judicial advisements) and evidence from a confidential *Marsden* hearing (attorney advisements)."

We decide that Garcia cannot establish prejudice for any purported deficient performance by his counsel. Substantial evidence, apart from the judicial or attorney advisements, supports the trial court's finding that Garcia knew he was on supervision, including Officer da Rocha's testimony. (See part II.A.2., *ante*.) Additionally, as found by the trial court in its pronouncement of its ruling, there was other substantial evidence, which Garcia does not dispute, to support its finding that Garcia's testimony that he did not believe he was on supervision was not credible. Specifically, the trial court found Garcia had never indicated to the probation officer that Garcia did not believe he was on supervision, and Garcia was familiar with the criminal justice system, having previously spent time in prison. Accordingly, substantial evidence supports the trial court's conclusion that Garcia's claim he was released from custody without any form of supervision lacked credibility.

### III.  DISPOSITION

The trial court's August 12, 2019 order is affirmed.

_____
                                  Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047402**
*People v. Garcia*